# EXHIBIT C

OneBeacon
PROFESSIONAL INSURANCE™

onebeaconpro.com

| | |
|---|---|
| RE:   Hospital Professional Liability - Primary<br>Devereux Foundation | **Policy** |
| Account No:  121          Policy No:  MPP-5447-13 | |

199 Scott Swamp Road       860.321.2888 t
Farmington, CT 06032       860.321.2889 f



199 Scott Swamp Road
Farmington, CT 06032

877.701.0171 t
866.625.3590 f

onebeaconpro.com

Thanks for choosing OneBeacon Professional Insurance as your liability insurance carrier.  You now have access to a broad range of risk management resources, all designed to assist you in your efforts to advance patient safety and mitigate risk.  And, in the event you do have a claim, you have an experienced team to work with you throughout the life of the claim.

**Risk Management Information and Support at Your Fingertips**

Resources Include

- Educational programs
- Electronic newsletters and headline alerts
- Access to publications/texts
- Consultative and research services
- Sample tools
- Policy and procedure development assistance
- Risk assessments

In addition to our in-house expertise, we have a relationship with The Rozovsky Group/Virtual Group, an industry leader offering a broad range of risk management services.  As an OBPI insured, you can register to start accessing this material immediately.

- Go to http://www.onebeaconpro.com/500 (this will bring you to OBPI's Services Page).
- Under Risk Management Programs, click on Hospitals, Physicians and Complex Risks or Medical Facilities.
- A screen will pop up, noting that you will be leaving the OBPI website. Click on "good to go" in the upper right corner of the screen.
- You will now be on The Rozovsky Group website.
- Please click on Register in the Subscriber Login section on the left hand side of the page.
- Fill in the requested information. **Please do not request to purchase** *Dialogues in Healthcare*. **As an OBPI insured, you will receive a complimentary subscription to this publication.**
- Click Submit.
- Within 24 hours, you will receive an email approving your registration, and you can now access the resources available to you.
- If you have difficulty registering, please contact Joshua Rozovsky at 860.242.1302 or josh@therozovskygroup.com.

Please know we value your privacy and will never sell or otherwise distribute your personal information to any third party.

**Superior Claims Support**

We realize that - despite best efforts - claims sometimes do occur.  An experienced Claims Examiner is assigned for each reported claim, and will serve as a dedicated resource and point of contact.  For your convenience, claims can be submitted one of three ways:

Secure E-mail:  obpiclaims@onebeaconpro.com (You will receive an immediate email acknowledgment)
Fax:  877.256.5067
U.S. Mail:

        Chief Claims Officer
        OneBeacon Professional Insurance
        199 Scott Swamp Road
        Farmington, CT 06032

We hope that you find these resources helpful as we strive to provide you with an entirely better insurance and risk management experience.  We welcome your feedback or questions, which can be sent to us at tellobpi@onebeaconpro.com.

If you are not the person who should be receiving this information, please forward it to the appropriate person and copy tgillis@onebeaconpro.com so we can update our files.

Thank you again for selecting OneBeacon Professional Insurance. We look forward to working with you.


Patricia Hughes, MSN, CPHRM
Vice President
Risk Management
860.321.2601
phughes@onebeaconpro.com

Tom Ruane
Vice President, Claims Leader
Medical and Professional Claims
860.321.2902
truane@onebeaconpro.com

## **OneBeacon Professional Insurance Medical Professional and General Liability Claim Reporting Guidelines**

Following are examples of the types of events that should be reported in accordance with the general conditions regarding Reporting of Claims, Occurrences and Circumstances under your One Beacon policy:

- Medication errors resulting in injury and/or requiring further treatment (including patient not receiving medication; receiving incorrect dosage of medication; or receiving wrong medication)
- Falls resulting in injury
- Family/Patient complaints of inadequate care resulting in injury
- Events reported to the state Dept of Health, other regulatory body or police
- Visitor injuries
- Unexpected death
- Serious injury (including, but not limited to, paraplegia; quadriplegia; or severe neurological impairment)
- Elopement
- Allegations of physical or sexual abuse
- Sentinel events
- Oral or written demands for damages
- Lawsuits
- Communication from an attorney regarding any of the events noted above
- Request from an attorney for medical records
- Any other event the Insured reasonably believes could result in a Claim under the policy

*The above list of events is not meant to be exhaustive or exclusive. Nothing contained in or omitted from this document should be deemed a waiver of any terms or conditions of any applicable policy. These guidelines are provided for general informational purposes only and should not be considered or relied upon as coverage, legal or risk-management advice. Readers should consult the specific terms of their policy and their own legal counsel for advice.*

*Please report all claims and reportable events to:*

Chief Claims Officer
OneBeacon Professional Insurance
199 Scott Swamp Road
Farmington, CT 06032
877.256.5067 (fax)
obpiclaims@onebeaconpro.com

# Homeland Insurance Company of Delaware

One Beacon Lane
Canton, MA 02021

**Policy Number:** MPP-5447-13

## DECLARATIONS

### HEALTH CARE ORGANIZATIONS AND PROVIDERS PROFESSIONAL LIABILITY, GENERAL LIABILITY AND EMPLOYEE BENEFIT LIABILITY POLICY

**THE COVERAGE AFFORDED BY THIS POLICY DIFFERS IN SOME RESPECTS FROM THAT AFFORDED BY OTHER POLICIES. *PLEASE READ THIS POLICY CAREFULLY.***

| ITEM 1. **FIRST NAMED INSURED** Name and Principal Address: Devereux Foundation 444 Devereux Dr Villanova, PA 19085-1932 **OTHER NAMED INSUREDS**: | ITEM 2. **POLICY PERIOD:** (a) Inception Date: July 1, 2013 (b) Expiration Date: July 1, 2014 Both dates at 12:01 a.m. at the Principal Address in ITEM 1. |
|---|---|

ITEM 3. **COVERAGE/TYPE/RETROACTIVE DATE(S)**

| | **Coverage** | **Type** | **Retroactive Date** |
|---|---|---|---|
| A. | Healthcare Professional Liability | Claims Made | July 1, 1990 |
| B. | General Liability | Occurrence | N/A |
| C. | Employee Benefit Liability | Claims Made | July 1, 1990 |
| D. | Evacuation Expense | Claims Made | N/A |
| E. | Legal/Media Expense | Claims Made | N/A |

ITEM 4. **LIMIT(S) OF LIABILITY** (inclusive of **Defense Expenses**); **DEDUCTIBLE/SELF-INSURED RETENTION**

A. Healthcare Professional Liability

Each Claim……………………………………………………$4,000,000

Aggregate for all Claims…………………………………………$12,000,000

Deductible ☒   Self-Insured Retention ☐

Per Claim……………………………………………$2,000,000

Aggregate……………………………………………$8,000,000

B. General Liability

Each Occurrence…………………………….………………$4,000,000

Aggregate for all Claims……....…………………………...........$12,000,000

Deductible ☐   Self-Insured Retention ☒

Per Occurrence……………………………………...Included in PL Deductible

Aggregate………………………………………….. Included in PL Deductible

G16442 (2-06 ed.)

C.   Employee Benefit Liability
     Each Claim…………….……………………………………… $4,000,000
     Aggregate for all Claims……………………………………………$12,000,000
     Deductible ☒    Self-Insured Retention ☐
          Per Claim…………….…………………………………$1,000
          Aggregate…………………………………………………N/A

D.   Evacuation Expense
     Each Claim…………….…………………………………………N/A
     Aggregate for all Claims…….……………………………………...N/A
     Deductible ☐    Self-Insured Retention ☐
          Per Claim…………….…………………………………N/A
          Aggregate…………………………………………………N/A

E.   Legal/Media Expense
     Each Claim…………….………………………………… N/A
     Aggregate for all Claims…….………………………………… N/A
     Deductible ☐    Self-Insured Retention ☐
          Per Claim…………….………………………………… N/A
          Aggregate…………………………………………………N/A

ITEM 5.     **PREMIUM:**  ▮▮▮▮▮

__ *Gross Premium:*  The Underwriter will pay a percentage of the Premium shown above as brokerage commission.  The Underwriter does not pay contingent or deferred commissions. Consult your broker for information concerning commission.

 X  *Net Premium:* The Premium shown above is net, and the Underwriter will pay no brokerage commission of any kind thereon.

 X  This Policy provides coverage for acts of terrorism as defined in the Terrorism Risk Insurance Act of 2002 (the "Act").  The premium attributable to this coverage is $Included.

__ This Policy specifically excludes coverage for acts of terrorism as defined in the Act.

ITEM 6.     **ALL NOTICES REQUIRED TO BE GIVEN TO THE UNDERWRITER UNDER GENERAL CONDITION (D) OF THE POLICY MUST BE ADDRESSED TO:**

     Chief Claims Officer
     OneBeacon Professional Insurance
     199 Scott Swamp Road
     Farmington, CT 06032

G16442 (2-06 ed.)

| ITEM 7. | **POLICY FORM AND ENDORSEMENTS ATTACHED AT ISSUANCE:** |
|---|---|
| | G16249 02 06 |
| | HPL-P-DEVX1  Amend Definition of Insured to Include Additional Individuals |
| | HPL-P-DEVX10 Limited Waiver of Subrogation - Insuring Agreement (A) |
| | HPL-P-DEVX2  Pollution Exclusion |
| | HPL-P-DEVX6 Grace Period for Notice of Claims Upon Renewal of Policy |
| | HPL-P-0024 Min Earned Premium |
| | HPL-P-0025 Service of Suit |
| | HPL-P-DEVX9 Co-Insurance Endorsement |
| | HPL-P-DEVX7 Amend Definition of Named Insured to Include Additional Entities with Separate Retroactive Dates |
| | HPL-P-DEVX8 Amend Definition of Named Insured to Include Additional Entities |
| | HPL-P-DEVX3 Amend Definition of Insured to Include Independent Contractors |
| | HPL-P-DEVX4 Insured vs. Insured Carveback Endorsement |
| | HPL-P-0016 Medical Payments |
| | HPL-P-DEVX5 Severability Endorsement |
| | HPL-P-0017 Fire Damage |
| | HPL-P-0059 Waiver of Subrogation - GL Only |
| | HPL-P-0037 ERP Options |
| | HPL-P-DEVX11 Amend Definition of Occurrence Endorsement |
| | HPL-P-DEVX12 Spousal Extension for Insuring Agreement (B) Endorsement |
| | HPL-P-DEVX13  Amend Notice of Cancellation Endorsement |
| | HPE-100013-12--8 - Personal Information Protection |
| | FTCA-004201-11 - Additional Insured Endorsement - Primary & Non-Contributory  (GL) |
| | HPL-P-DEVX15 Amend Section III Exclusion (b)(18) f |
| | Manuscript – Quota Share Endorsement |

These Declarations, the completed signed Application, and the Policy (together with any and all endorsements thereto) shall constitute the entire agreement between the Underwriter and the Insured(s).

**Homeland Insurance Company of Delaware**
By:

_T. M. Smith_

_____          August 29, 2013
Its Authorized Representative                                                    Date:

G16442 (2-06 ed.)

*PORTIONS OF THIS POLICY APPLY ONLY TO CLAIMS FIRST MADE AGAINST THE INSURED AND REPORTED TO THE UNDERWRITER DURING THE POLICY PERIOD.  PLEASE READ THIS POLICY CAREFULLY.*

## Homeland Insurance Company of Delaware

### HEALTH CARE ORGANIZATIONS AND PROVIDERS PROFESSIONAL LIABILITY, GENERAL LIABILITY AND EMPLOYEE BENEFIT LIABILITY POLICY

In consideration of the payment of the premium, and in reliance on all statements made and information furnished to **Homeland Insurance Company of Delaware** (hereinafter referred to as the "Underwriter"), and subject to all of the terms and conditions of this Policy (including all endorsements hereto), the Underwriter and the Insured agree as follows:

## I.    INSURING AGREEMENTS

**(A)    Claims Made Professional Liability Insurance:**

The Underwriter will pay up to the applicable Limit of Liability shown in ITEM 4.A. of the Declarations on behalf of the **Insured** any **Loss**, including **Defense Expenses**, that the **Insured** is legally obligated to pay as a result of any covered **Claim** for a **Professional Services Wrongful Act** happening on or after the **Retroactive Date**; provided, that the **Claim** is first made against the **Insured** during the **Policy Period** or applicable **Extended Reporting Period**.

**(B)    Occurrence-Based General Liability Insurance:**

The Underwriter will pay up to the applicable Limit of Liability shown in ITEM 4.B. of the Declarations on behalf of the **Insured** any **Loss**, including **Defense Expenses**, which the **Insured** is legally obligated to pay as a result of a covered **Claim** alleging **Bodily Injury**, **Property Damage**, **Advertising Injury** or **Personal Injury** that is caused by an **Occurrence** that takes place during the **Policy Period**.

**(C)    Claims Made Employee Benefit Liability Insurance:**

The Underwriter will pay up to the Limit of Liability shown in ITEM 4.C. of the Declarations on behalf of the **Insured** any **Loss**, including **Defense Expenses**, that the **Insured** is legally obligated to pay as a result of any covered **Claim** for an **Employee Benefit Wrongful Act** happening on or after the **Retroactive Date**; provided, that the **Claim** is first made against the **Insured** during the **Policy Period** or applicable **Extended Reporting Period**.

**(D)    Evacuation Expense Reimbursement Insurance:**

Upon satisfactory proof of payment by the **Named Insured**, the Underwriter will reimburse the **Named Insured** up to the amount set forth in ITEM 4(D) of the Declarations for

**Evacuation Expense** actually paid by the **Named Insured** during the **Policy Period** in connection with an **Evacuation** occurring after the **Retroactive Date**.

**(E)   Legal/Media Expense Reimbursement Insurance:**

Upon satisfactory proof of payment by the **Named Insured**, the Underwriter will reimburse the **Named Insured** up to the amount set forth in ITEM 4(E) of the Declarations for **Legal/Media Expense** actually paid by the **Named Insured** during the **Policy Period** in connection with a **Legal Event** occurring after the **Retroactive Date,** provided, that the Underwriter will have no liability whatsoever for fines, penalties, assessments of costs or other financial awards associated with any such **Legal Event**.

## II.   DEFINITIONS

(A)   "**Administration**" as used in connection with **Employee Benefit Programs** shall mean the following acts if authorized by the **Named Insured**:

(1)   giving counsel to **Employees** with respect to **Employee Benefit Programs**;

(2)   interpreting the **Employee Benefit Programs**;

(3)   handling records and processing of **Claims** in connection with the **Employee Benefit Programs**; and

(4)   effecting enrollment, termination or cancellation of **Employees** under **Employee Benefit Programs**.

(B)   "**Advertising Injury**" means injury arising out of one or more of the following offenses:

(1)   oral or written publication of material that slanders or libels a person or an organization or disparages a person's or an organization's goods, products or services;

(2)   oral or written publication of material that violates a person's right of privacy; or

(3)   misappropriation of advertising ideas or style of doing business.

(C)   "**Bodily Injury**" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time; mental anguish; and mental injury.

(D)   "**Claim**" means a written demand received by an **Insured** for monetary damages resulting from a **Wrongful Act** or an **Occurrence**.

(E)   "**Covered Contract**" means any lease of premises; sidetrack agreement; elevator maintenance agreement; easement of license agreement; obligation to indemnify a municipality if the obligation is required by ordinance and is not connected to **Insured Work** for the municipality; contract or agreement under which the **Named Insured**

assumes the tort liability of a municipality for **Bodily Injury** or **Property Damage** covered under this Policy that is sustained by others and results from **Insured Work** for the municipality; or any contract or agreement specifically listed in SCHEDULE A attached to and made part of this Policy, under which the **Named Insured** assumes the tort liability of another to pay damages for **Bodily Injury** or **Property Damage** covered by this Policy that is sustained by others.

(F)   "**Defense Expenses**" means the reasonable fees of attorneys, experts and consultants costs and expenses incurred in the investigation, adjustment, defense and or appeal of a **Claim** with the approval or at the direction of the Underwriter; provided that **Defense Expenses** shall not include:

    (1)   remuneration, salaries, overhead, fees, loss of earning reimbursement or benefit expenses of any **Insured**;

    (2)   any amounts incurred in defense of a **Claim** for which any other insurer has a duty to defend, regardless whether such other insurer undertakes such duty; or

    (3)   any benefits under an **Employee Benefit Program**.

(G)   "**Employee**" means any person who has an assigned work schedule for and is on the regular payroll of the **Named Insured**, with federal and state taxes withheld.  Independent contractors are not **Employees**.  An **Employee's** status as an **Insured** shall be determined as of the date of the **Occurrence** or **Wrongful Act** upon which a **Claim** involving the **Employee** is based.

(H)   "**Employee Benefit Programs**" means any group life insurance, group accident and health insurance, profit sharing plans, pension plans, **Employee** stock subscription plans, workers' compensation, unemployment insurance, social security and disability benefits insurance or any other similar plan under the **Administration** of the **Named Insured**.

(I)   "**Employee Benefit Wrongful Act**" means any actual or alleged act, error or omission, or series of acts, errors or omissions, by any **Insured** in the **Administration** of an **Employee Benefit Program**.

(J)   "**Employment Practices**" means any of the following: breach of any employment contract; failure or refusal to hire or employ; dismissal, discharge, reduction in force, downsizing or termination of employment, whether actual or constructive; demotion, reassignment, failure or refusal to promote, or deprivation of career opportunity; discipline of **Employees**; evaluation of **Employees**; discrimination or harassment of any kind or on any basis including, but not limited to, discrimination, limitation, segregation or classification based on race, sex, marital status, ancestry, physical or mental handicaps, age, sexual preference, pregnancy or religion or other status that is protected under any applicable federal, state or local statute or ordinance affecting any present or former **Employee** or applicant for employment; humiliation or defamation of any present or former **Employee** or applicant for employment; retaliatory treatment against an **Employee** arising out of the **Employee's** attempted or actual exercise of the **Employee's** rights under the law; employment-related misrepresentations; or failure to implement appropriate workplace or employment policies

or procedures.

(K)   "**Evacuation**" means the removal from one or more of the **Named Insured's** facilities to any other location of fifteen (15) or more patients or residents in such facility(ies) as a result of any natural or man-made occurrence that, in the reasonable judgment of the **Named Insured's** management, causes or could potentially cause such facility(ies) to be unsafe for such patients or residents.

(L)   "**Evacuation Expense"** means reasonable costs incurred in connection with an **Evacuation**, including costs associated with transporting and lodging patients or residents who have been evacuated.   **Evacuation Expense** does not include any remuneration, salaries, overhead or benefit expenses of the **Named Insured**.

(M)   "**Extended Reporting Period**" means the period of time after the **Policy Period** for reporting any **Claim** for a **Wrongful Act** or an **Occurrence** that happened after the **Retroactive Date** and before the termination of the **Policy Period**.

(N)   "**First Named Insured**" means the entity designated as such in ITEM 1 of the Declarations.

(O)   "**Hostile Fire**" means a fire which becomes uncontrollable or breaks out from where it was intended to be contained; provided, that **Hostile Fire** does not include any fire that originates at any site operating as a waste disposal facility or waste storage facility.

(P)   "**Impaired Property**" means tangible property, other than **Insured Property** or **Insured Work**, that cannot be used or is not useful because:

   (1)   it incorporates **Insured Product** or **Insured Work** that is known or thought to be defective, deficient, inadequate or dangerous; or

   (2)   the **Named Insured** has failed to fulfill the terms of any contract or agreement.

(Q)   "**Insured**" means any of the following:

   (1)   the **Named Insured**;

   (2)   any **Employee** or **Volunteer**; but only when such **Employee** or **Volunteer** is acting within the capacity and scope of his or her duties as such;

   (3)   any **Insured Medical Practitioner**;

   (4)   any member of the **Named Insured's** medical staff who is not an **Employee** or an **Insured Medical Practitioner**, while acting within the capacity and scope of his or her duties under the medical staff bylaws, rules and regulations, including such authority and responsibility as may be delegated to such medical staff member by the **Named Insured**, provided that such member shall not be an **Insured** under this Policy for **Claims** arising from direct patient care;

(5) the **Named Insured's** medical directors, department heads, or chiefs of staff but only while acting within the scope and capacity of their duties to the **Named Insured**;

(6) any member of a duly authorized board or any committee of the **Named Insured**; any person communicating information to the **Named Insured** or its medical or professional staff for the purpose of aiding in the evaluation of **Professional Services** or the qualifications, professional competence, fitness, or character of an applicant for membership or privileges on such medical or professional staff or for purposes of initiating corrective action; or any person charged with the duty of acting as a hearing officer or an agent of a judicial review committee or executing directives of any such board or committee but, in each case, only when such person is acting within the capacity and scope of his or her duties to such board or committee;

(7) solely with respect to and limited to coverage afforded under INSURING AGREEMENT (A), the lawful spouses of individual **Insureds** and, in the event of the death, incapacity, or bankruptcy of an individual **Insured** the estates, heirs, legal representatives or assigns of such individual **Insured**;

(8) any **Insured Medical Practitioner** or **Employee** providing **Proctoring Services** but only with respect to his or her legal liability for providing, or failing to provide, such **Proctoring Services**. The fact that a patient also may be obligated to pay for **Medical Services** rendered to the patient shall not reduce the coverage for the **Insured** to the extent of his or her **Proctoring Services**;

(9) any person enrolled as a student in a formal training program offered by the **Named Insured** or a subsidiary or an affiliate in connection with the **Named Insured's** on-site operation as a health care organization or provider but only for such person's legal liability arising from the performance of, or failure to perform, duties relating to the on-site training program in which he or she is enrolled;

(10) any driver or operator of **Mobile Equipment** but only when operating **Mobile Equipment** at the direction and with the permission of the **Named Insured;**

(R) "**Insured Medical Practitioner**" means any clinical professional including, without limitation, any physician, surgeon, intern, extern, resident, certified registered nurse anesthetist, osteopathic physician and surgeon, podiatrist and dentist who, on the date of the **Occurrence** or **Wrongful Act** giving rise to any **Claim** covered by this Policy, was:

(1) independently professionally licensed by the State in which the **Insured Medical Practitioner** is providing services for or on behalf of the **Named Insured**; and

(2) an **Employee**.

(S) "**Insured Product**" means:

(1) any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by

       (a)     the **Named Insured**;

       (b)     others trading under the name of the **Named Insured**; or

       (c)     a person or an organization whose business or assets the **Named Insured** has acquired; and

(2)     containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products. **Insured Product** includes:

       (a)     warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of the **Insured Product**; and

       (b)     the providing of or failure to provide warnings or instructions. **Insured Product** does not include vending machines or other property rented to or located for the use of others but not sold.

**Insured Product** includes leased equipment used in or useful to the **Named Insured** in providing its services, but only if the lease for such leased equipment had an original term of six (6) months or more.  **Insured Product** does not include vending machines or other property rented to, or located for the use of, others but not sold.

(T)    "**Insured Work**" means:

(1)     work or operations performed by the **Named Insured** or on the **Named Insured's** behalf; and

(2)     materials, parts or equipment furnished in connection with such work or operations. **Insured Work** includes:

       (a)     warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of the **Insured Work;** and

       (b)     the providing of or failure to provide warnings or instructions.

(U)    "**Legal/Media Expense**" means reasonable fees and costs of attorneys, experts and consultants, including third-party media consultants, incurred in the investigation and defense of an actual or alleged **Legal Event**.  **Legal/Media Expense** includes costs incurred in the management of public relations with respect to such **Legal Event**, but does not include any remuneration, salaries, overhead, fees, loss of earning reimbursement or benefit expenses of the **Named Insured**.

(V)    "**Legal Event**" means any criminal investigation; criminal complaint; indictment; administrative, regulatory, disciplinary or licensure proceeding; or other agency proceeding (other than proceedings in the normal course of **Named Insured's** business), in any such case relating to the alleged violation or infringement of one or more state or federal statutes or regulations regarding:

(a)     patient privacy, including the handling of protected health information;

(b)     hiring practices and reference checking with respect to potential employees; or

(c)     any other similar law or regulation applicable to operations of the **Named Insured** and intended to protect the rights or safety of patients or residents.

(W)     "**Loss**" means **Defense Expenses**, **Legal/Media Expenses**, **Evacuation Expenses** and any damages (including punitive or exemplary damages where insurable by law), settlements, judgments or other amounts in excess of the applicable Retention, if any, stated in ITEM 4 of the Declarations and not exceeding the applicable Limit of Liability stated in ITEM 4 of the Declarations which an **Insured** is legally obligated to pay as a result of a **Claim**. **Loss** shall not include:

(1)     the multiple portion of any multiplied damage award;

(2)     fines, penalties, sanctions, fees, government payments or taxes;

(3)     amounts owed to any provider of **Medical Services** under any contract;

(4)     restitution, return or disgorgement of fees, profits, charges for products or services rendered, capitation payments, premium or any other funds allegedly wrongfully held or obtained;

(5)     benefits under an **Employee Benefit Plan**;

(6)     non-monetary relief or redress in any form other than monetary compensation or monetary damages, including without limitation the cost of complying with any injunctive, declaratory or administrative relief; or

(7)     matters which are uninsurable under applicable law.

(X)     **"Managed Care Services"** means services or activities performed in the **Administration** or management of health care plans; advertising, marketing or selling health care plans or health care products; handling, investigating or adjusting **Claims** for benefits or coverages under health care plans; or establishing health care provider networks.

(Y)     "**Medical Services**" means health care, medical care, or treatment provided to any individual, including without limitation any of the following: medical, surgical, dental, psychiatric, mental health, chiropractic, osteopathic, nursing, or other professional health care; the furnishing or dispensing of medications, drugs, blood, blood products, or medical, surgical, dental, or psychiatric supplies, equipment, or appliances in connection with such care; the furnishing of food or beverages in connection with such care; the providing of counseling or other social services in connection with such care; and the handling of, or the performance of post-mortem examinations on, human bodies.

(Z)     "**Mobile Equipment**" means any of the following types of land vehicles, including any

attached machinery or equipment:

(1)      bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

(2)      vehicles maintained for use solely on or next to premises owned or rented by an **Insured**;

(3)      vehicles that travel on crawler treads;

(4)      vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

      (a)      power cranes, shovels, loaders, diggers or drills, or

      (b)      road construction or resurfacing equipment such as graders, scrapers or rollers;

(5)      vehicles not described in clauses (1)-(4) above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

      (a)      air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

      (b)      cherry pickers and similar devices used to raise or lower workers; and

(6)      vehicles not described in clauses (1)-(4) above maintained primarily for purposes other than the transportation of persons or cargos. **Mobile Equipment** does not include self-propelled vehicles with the following types of permanently attached equipment:

      (a)      equipment designed primarily for:

            (i)      snow removal;

            (ii)      road maintenance but not construction or resurfacing; or

            (iii)      street cleaning;

      (b)      cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

      (c)      air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

(AA)      "**Mold**" means mold, mildew, spores, mycotoxins, fungi, organic pathogens or other micro organisms of any type, nature or description whatsoever.

(BB)   "**Named Insured**" means the **First Named Insured** and each other entity designated as a **Named Insured** in ITEM 1 of the Declarations.

(CC)   "**Occurrence**" means an accident, including continuous or repeated exposure to the same harmful conditions, which results in injury or damage neither expected nor intended by the **Insured**.

(DD)   "**Peer Review**" means the process of evaluating, by members of a formal, duly constituted professional review board or committee of the **Named Insured**, any individual or entity for purposes of selecting, employing, contracting with or credentialing current or prospective providers of **Medical Services.**

(EE)   "**Personal Injury**" means injury, other than **Bodily Injury**, arising out of one or more of the following offenses:

   (1)   false arrest, detention or imprisonment;

   (2)   malicious prosecution;

   (3)   the wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies by or on behalf of its owner, landlord or lessor;

   (4)   oral or written publication of material that slanders or libels a person or an organization or disparages a person's or an organization's goods, products or services; or

   (5)   oral or written publication of material that violates a person's right of privacy.

(FF)   "**Policy Period**" means the period from the Inception Date of this Policy stated in ITEM 2(a) of the Declarations to the Expiration Date of this Policy stated in ITEM 2(b) of the Declarations or to any earlier cancellation date of this Policy.

(GG)   "**Pollutant**" means smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, medical waste, waste materials (including materials which are intended to be or have been recycled, reconditioned or reclaimed) or other irritants, pollutants or contaminants. **Pollutant** does not include smoke, fumes, vapor or soot emanating from equipment used to heat or cool a building owned or operated by the **Named Insured**.

(HH)   "**Proctoring Services**" means such supervision, evaluation or instruction provided by a member of the **Named Insured's** medical staff to other members of, or applicants to, the **Named Insured's** medical staff or to residents, paramedics, trainees or **Employees** of the **Named Insured**, pursuant to medical staff bylaws, rules and regulations or by authority of a governmental authority or directive, which is required by the **Named Insured** as an obligation of medical staff membership and for which the medical staff member either volunteers or is paid by the **Named Insured**.

(II)   "**Professional Services** means:

    (1)   **Medical Services**;

    (2)   the activities of an **Insured** as a member of a board or committee of the **Named Insured**, or as a member of any committee of the medical or professional staff of the **Named Insured**, when engaged in **Peer Review** or **Utilization Review**;

    (3)   the activities of an **Insured** as a member of a formal accreditation, standards review or similar professional board or committee, including executing the directives of such board or committee; or

    (4)   reviewing the quality of **Medical Services** or providing quality assurance on behalf of the **Named Insured**.

(JJ)   "**Professional Services Wrongful Act** means any actual or alleged act, error or omission, or series of acts, errors or omissions, by an **Insured** in rendering, or failing to render, **Professional Services**.

(KK)   "**Property Damage**" means:

    (1)   physical injury to tangible property, including all resulting loss of use of that property; provided, that such loss of use shall be deemed to have occurred at the time of the physical injury that caused it; or

    (2)   loss of use of tangible property that is not physically injured; provided, that such loss of use shall be deemed to occur at the time of the **Occurrence** that caused it.

(LL)   "**Related Claims**" means:

    (i)   **Claims** for **Wrongful Acts**, and

    (ii)   **Claims** for **Bodily Injury**, **Property Damage**, **Advertising Injury** or **Personal Injury** caused by an **Occurrence**,

based on, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving the same or related facts, circumstances, situations, transactions, or events or the same or related series of facts, circumstances, situations, transactions, or events, whether related logically, causally, or in any other way, in any combination, whether or not involving more than one policy, practice, procedure or product, including any course of treatment, and whether or not deemed a continuous tort.

(MM)   "**Retroactive Date**" means the date(s) set forth in ITEM 3 of the Declarations.

(NN)   "**Utilization Review**" means the process of evaluating the appropriateness or necessity of **Medical Services** provided or to be provided by an **Insured**. **Utilization Review** shall include prospective review of proposed **Medical Services**, concurrent review of ongoing

**Medical Services**, and retrospective review of already rendered **Medical Services**; **Utilization Review** does not include services or activities performed in the **Administration** or management of health care plans.

(OO) "**Volunteer**" means a person who provides his or her services or labor to the **Named Insured**, and whose activities are supervised and directed by the **Named Insured**, but who does not have a contract to provide and is not compensated for such services and labor. No **Insured Medical Practitioner**, **Employee** or staff physician shall be considered a **Volunteer**.

(PP) "**Wrongful Act**" means any **Professional Services Wrongful Act** or **Employee Benefit Wrongful Act**.

## III.   EXCLUSIONS

**(A)**   **Exclusions Applicable to INSURING AGREEMENT (A):**

In addition to the EXCLUSIONS listed under (D) below, no coverage will be available under INSURING AGREEMENT (A), and the Underwriter will not pay any **Loss,** including **Defense Expenses,** for any **Claim** based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any actual or alleged:

(1)   discrimination of any kind on any basis, including, but not limited to, discrimination, limitation, segregation or classification based on race, sex, marital status, ancestry, physical or mental handicaps, age, sexual preference, pregnancy, religion or other status that is protected under any applicable federal, state or local statute or ordinance affecting any present or former **Employee** or applicant for employment;

(2)   **Property Damage;**

(3)   **Advertising Injury** or **Personal Injury**, except to the extent that such injury relates to the rendering of, or failure to render, **Professional Services**;

(4)   **Employee Benefit Wrongful Acts;**

(5)   rendering of, or failure to render, **Medical Services** by any **Insured** while the **Insured's** license to practice is or was not active; or

(6)   violation of the Employee Retirement Income Security Act of 1974 (ERISA), the Fair Labor Standards Act (except the Equal Pay Act), the National Labor Relations Act, the Worker Adjustment and Retraining Notification Act, the Consolidated Omnibus Budget Reconciliation Act, the Occupational Safety and Health Act, all as may be amended, or any similar federal, state or local statutory or common law, or any rules or regulations promulgated thereunder; except this EXCLUSION (A)(6) will not apply to any **Claim** arising out of the rendering of, or failure to render, **Medical Services**, which is otherwise covered under INSURING AGREEMENT (A) of this Policy and for which reimbursement for such services was received from

health care plans covered by such statutes, rules or regulations.

**(B)** **Exclusions Applicable to INSURING AGREEMENT (B):**

In addition to the EXCLUSIONS listed under (D) below, no coverage will be available under INSURING AGREEMENT (B), and the Underwriter will not pay any **Loss,** including **Defense Expenses,** for any **Claim** based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any actual or alleged:

(1) **Professional Services Wrongful Act**;

(2) discrimination of any kind on any basis, including, but not limited to, discrimination, limitation, segregation or classification based on race, sex, marital status, ancestry, physical or mental handicaps, age, sexual preference, pregnancy, religion or other status that is protected under any applicable federal, state or local statute or ordinance affecting any present or former **Employee** or applicant for employment, except to the extent that such discrimination relates to the rendering of, or failure to render, **Professional Services**;

(3) **Bodily Injury**, **Property Damage**, **Personal Injury** or **Advertising Injury** expected or intended from the standpoint of any **Insured**; except for **Bodily Injury** resulting from use of reasonable force to protect persons or property;

(4) **Personal Injury** or **Advertising Injury** arising out of oral or written publication of material:

   (a) if done by or at the direction of an **Insured** with knowledge of its falsity; or

   (b) whose first publication took place before the Inception Date set forth in ITEM 2 of the Declarations;

(5) **Advertising Injury** arising out of any false, incorrect or misleading description of the price of goods, products or services;

(6) **Employee Benefit Wrongful Acts**;

(7) **Bodily Injury** or **Property Damage** for which an **Insured** is or may be held liable by reason of:

   (a) causing or contributing to the intoxication of any person;

   (b) the furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

   (c) any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages;

except this EXCLUSION (B)(7) will not apply if the **Insured** is not in the business of manufacturing, selling or distributing alcoholic beverages.

(8) **Bodily Injury** or **Property Damage** arising out of the ownership, maintenance, use, operation or entrustment to others of any aircraft, auto, watercraft, motor vehicle or semi-trailer or the loading or unloading thereof; except to the extent such injury arises from the loading or unloading of patients or relates to the maintenance or use of non-owned aircraft, watercraft or motor vehicles but only as excess cover over any other insurance, whether collectible or not;

(9) **Bodily Injury** or **Property Damage** arising out of:

    (a)    the transportation of **Mobile Equipment** by, in or on an auto owned or operated by, or rented or loaned to, any **Insured**; or

    (b)    the use of **Mobile Equipment** in, or while in practice or preparation for, any prearranged racing, speed, demolition or stunt activity;

(10) **Bodily Injury** or **Property Damage** arising from any consequence, direct or indirect, of war, invasion, hostilities (whether war be declared or not), civil war, rebellion, revolution, insurrection, military or usurped power, strike, riot or civil insurrection;

(11) **Property Damage** to:

    (a)    property the **Insured** owns, rents or occupies;

    (b)    premises sold, given away or abandoned by the **Named Insured**, if the **Property Damage** arises out of any part of those premises;

    (c)    property loaned to the **Insured**;

    (d)    personal property in the care, custody or control of the **Insured**;

    (e)    that particular part of real property on which the **Insured**, or any contractor or subcontractor working directly or indirectly on the **Insured's** behalf, is performing operations, if the **Property Damage** arises out of those operations;

    (f)    that particular part of any property that must be restored, repaired or replaced because the **Insured's Work** was incorrectly, poorly or improperly performed on it; or

    (g)    property which is being transported by the **Insured** by automobile, **Mobile Equipment** or team, including the loading and unloading thereof;

EXCLUSION (B)(11)(b) above does not apply if the premises are **Insured Work**

and were never occupied, rented or held for rental by the **Named Insured**;

EXCLUSIONS (B)(11)(c), (d), (e), and (f) above do not apply to liability assumed under a sidetrack agreement; and

EXCLUSION (B)(11)(f) above does not apply to **Property Damage** included in the products and completed operations hazard;

(12)   **Property Damage** to the **Insured Product** arising out of it or any part of it;

(13)   **Property Damage** to **Insured Work** arising out of it or any part of it and included in the products and completed operations hazard; except if the damaged work or the work out of which the damage arises was performed on behalf of the **Named Insured** by a subcontractor;

(14)   **Property Damage** to **Impaired Property** or property that has not been physically injured, arising out of:

    (a)   defect, deficiency, inadequacy or dangerous condition in **Insured Product** or **Insured Work**; or

    (b)   a delay or failure by an **Insured** or anyone acting on the **Named Insured's** behalf to perform a contract or an agreement in accordance with its terms; except this EXCLUSION (B)(14)(b) does not apply to the loss of use of other property arising out of sudden and accidental physical injury to **Insured Work** after it has been put to its intended use;

(15)   damages claimed for any loss, cost or expense incurred by the **Named Insured** or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

    (a)   **Insured Product**;

    (b)   **Insured Work**; or

    (c)   **Impaired Property**, if such product, work or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it;

(16)   injury or damage arising in whole or in part, either directly or indirectly, out of asbestos, regardless whether the asbestos is:

    (a)   airborne as a fiber or particle;

    (b)   contained in a product;

    (c)   carried or transmitted on clothing or by any other means; or

(d)    contained in or a part of:

    (i)    any building;

    (ii)    any building material;

    (iii)    any insulation product; or

    (iv)    any component part of any building, building material or insulation product;

(17)    (a)    exposure to, or the manifestation, release, dispersal, seepage, migration, discharge, appearance, presence, reproduction or growth of, **Mold**;

    (b)    cost, expense or charge to test, monitor, clean up, remediate, mitigate, remove, contain, treat, detoxify, neutralize, rehabilitate, or in any other way respond to or assess the effect(s) of **Mold**;

    (c)    any cost, expense, charge, fine or penalty incurred, sustained or imposed by order, direction, request or agreement of any court, governmental agency, regulatory body or civil, public or military authority in connection with or in any way relating to **Mold**;

except this EXCLUSION (B)(17) will not apply to any **Claim** based on, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving the **Insured's** use of **Mold** in connection with the rendering of **Medical Services**, including medical research activities; or

(18)    (a)    any actual or alleged exposure to, or generation, storage, manifestation, transportation, discharge, emission, release, dispersal, seepage, migration, escape, appearance, presence, reproduction, growth of, treatment, removal or disposal of, any **Pollutant**, except where such exposure, generation, storage, manifestation, transportation, discharge, emission, release, dispersal, seepage, migration, escape, appearance, presence, reproduction, growth, treatment, removal or disposal was caused by an unintentional fire or any heat, smoke or fumes issuing from such unintentional fire;

    (b)    any fee, cost, expense or charge to test, monitor, clean up, remediate, mitigate, remove, contain, treat, detoxify, neutralize or rehabilitate any **Pollutant**;

    (c)    any fee, cost, expense, charge, fine or penalty incurred, sustained or imposed by order, direction, request or agreement of any court, governmental agency, regulatory body or civil, public or military authority in connection with or in any way relating to any Pollutant;

except this EXCLUSION (B)(18) will not apply to any **Claim** for **Bodily Injury** or **Property Damage** caused by heat, smoke or fumes from a **Hostile Fire**; or

(19)    violation of the Employee Retirement Income Security Act of 1974 (ERISA), the Fair Labor Standards Act (except the Equal Pay Act), the National Labor Relations Act, the Worker Adjustment and Retraining Notification Act, the Consolidated Omnibus Budget Reconciliation Act, the Occupational Safety and Health Act, all as may be amended, or any similar federal, state or local statutory or common law, or any rules or regulations promulgated thereunder; except this EXCLUSION (B)(19) will not apply to a **Claim** arising out of the rendering of, or failure to render, **Medical Services**, which is otherwise covered under INSURING AGREEMENT (A) of this Policy and for which reimbursement for such services was received from health care plans covered by such statutes, rules or regulations; or

(20)    any actual or alleged nuclear reaction, nuclear radiation, radioactive contamination, or radioactive substance.

**(C)    Exclusions Applicable to INSURING AGREEMENT (C):**

In addition to the Exclusions listed in EXCLUSION (D) below, no coverage will be available under INSURING AGREEMENT (C), and the Underwriter will not pay any **Loss,** including **Defense Expenses,** for any **Claim** based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any actual or alleged:

(1)    **Bodily Injury** or **Property Damage**;

(2)    failure of performance by any insurer;

(3)    failure of securities or other investments to perform as represented or advice given to an **Employee** to participate or not to participate in stock subscription or other benefit programs; provided, that for purposes of this EXCLUSION (C)(3), "security" means a security of any nature whatsoever including, without limitation, stocks, shares, bonds, debentures, options, derivatives, partnership interests, limited liability company interests, any other form of debt or equity instrument and any other forms of ownership interest;

(4)    the insufficiency of funds to meet any obligations of **Employee Benefit Programs**;

(5)    discrimination of any kind on any basis, including, but not limited to, discrimination, limitation, segregation or classification based on race, sex, marital status, ancestry, physical or mental handicaps, age, sexual preference, pregnancy, religion or other status that is protected under any applicable federal, state or local statute or ordinance affecting any present or former **Employee** or applicant for employment, except to the extent that such discrimination relates to the rendering of, or failure to render, **Professional Services**; or

(6)    **Professional Services Wrongful Acts**; or

(7)    violation of the Employee Retirement Income Security Act of 1974 (ERISA), the Fair Labor Standards Act (except the Equal Pay Act), the National Labor Relations Act, the Worker Adjustment and Retraining Notification Act, the Consolidated Omnibus Budget Reconciliation Act, the Occupational Safety and Health Act, all as may be amended, or any similar federal, state or local statutory or common law, or any rules or regulations promulgated thereunder.

**(D)    Exclusions Applicable to All INSURING AGREEMENTS:**

Except as otherwise expressly provided in this Policy, this Policy does not apply to, and the Underwriter will not pay **Loss,** including **Defense Expenses,** for any **Claim** based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any actual or alleged:

(1)    **Wrongful Act** or **Occurrence** that happened before the **Retroactive Date** if applicable, or after the **Retroactive Date** if, on the Inception Date of this Policy, the **Insured** knew, had been told, should have known or had notified a prior professional liability insurer or administrator of any other risk transfer instrument that such **Wrongful Act** or **Occurrence** would or could result in a **Claim**;

(2)    violation of any federal, state or local antitrust, restraint of trade, unfair competition, or price-fixing law, or any rules or regulations promulgated thereunder, or any involvement in any agreement or conspiracy to restrain trade, except for any **Claim** otherwise covered under INSURING AGREEMENT (A) arising out of the rendering of, or failure to render, **Professional Services**;

(3)    dishonest, fraudulent, criminal or intentionally malicious act, error or omission by an **Insured**; any willful violation of law, statute, rule or regulation by an **Insured**; or the gaining of any profit, remuneration or advantage by any **Insured** to which such **Insured** was not legally entitled, including, but not limited to, health care fraud; provided, however, that no such act of one **Insured** will be imputed to any other **Insured** who was not aware of and did not participate in such act;

(4)    obligation for which the **Named Insured** or any other insurer may be liable under workers' compensation, unemployment compensation, disability benefits or any similar law;

(5)    obligation which an **Insured** has assumed under a written or oral contract or agreement; except this EXCLUSION (D)(5) will not apply to:

   (a)    liability an **Insured** would have had in the absence of such contract or agreement; or

   (b)    liability assumed by the **Named Insured** under a **Covered Contract**;

(6)    **Claim** made by or for the benefit of, or in the name or right of, one current or former **Insured** against another current or former **Insured**; except this EXCLUSION (D)(6) shall not apply to **Peer Review** activities otherwise covered by

this Policy;

(7)     **Employment Practices**;

(8)     liability of any subsidiary or affiliate as described in GENERAL CONDITION (I) or its **Insured Persons** acting in their capacity as such for any **Claim**, **Occurrence**, fact, circumstance, situation, transaction, event or **Wrongful Act** or series of **Claims**, **Occurrences**, facts, circumstances, situations, transactions, events or **Wrongful Acts** happening before the date such entity became a subsidiary;

(9)     unauthorized or illegal use or release of confidential, private or proprietary information;

(10)    liability of any individual acting as an independent contractor for an **Insured**; except this EXCLUSION (D)(10) shall not exclude coverage for **Loss**, including **Defense Expenses**, from **Claims** based upon the actual or alleged vicarious liability of an **Insured**.

(11)    infringement of any right of patent, service mark, trademark, copyright, title or slogan; or

(12)    liability of any **Insured** for **Managed Care Services**, except this EXCLUSION (D)(12) will not apply to liability of any **Insured** for **Professional Services**.


## IV.     GENERAL CONDITIONS

### (A)    Limits of Liability

(1)     Insuring Agreement A – Professional Liability

   a.   The "Each Claim" amount stated in ITEM 4(A) of the Declarations will be the Underwriter's maximum Limit of Liability for all **Loss**, including **Defense Expenses**, resulting from each **Claim** or **Related Claims** for which this Policy provides coverage under INSURING AGREEMENT A.

   b.   The "Aggregate for all Claims" amount stated in ITEM 4(A) of the Declarations will be the Underwriter's maximum Limit of Liability for **Loss**, including **Defense Expenses**, resulting from all **Claims** or **Related Claims** for which this Policy provides coverage under INSURING AGREEMENT A.

(2)     Insuring Agreement B – General Liability

   a.   The "Each Claim" amount for General Liability, Products-Completed Operations, Personal Advertising Injury, Fire Damage and Medical Expense stated in ITEM 4(B) of the Declarations will be the Underwriter's maximum Limit of Liability for all **Loss**, including **Defense Expenses**, resulting from each **Claim** or **Related Claims** for which this Policy provides coverage under

    b.  The "Aggregate for all Claims" amount stated in ITEM 4(B) of the Declarations:

        i.  With respect to General Liability, Products-Completed Operations, Personal Advertising Injury and Fire Damage will be the Underwriter's maximum Limit of Liability for all **Loss**, including **Defense Expenses**, resulting from all **Claims** or **Related Claims** under all such coverages for which this Policy provides coverage under INSURING AGREEMENT B; and

        ii.  With respect to Medical Expense, will be the Underwriter's maximum Limit of Liability for all **Loss**, including **Defense Expenses**, resulting from all **Claims** or **Related Claims** under such Medical Expense coverage for which this Policy provides coverage under INSURING AGREEMENT B.

(3)    Insuring Agreement C – Employee Benefit Liability

    a.  The "Each Claim" amount stated in ITEM 4(C) of the Declarations will be the Underwriter's maximum Limit of Liability for all **Loss**, including **Defense Expenses**, resulting from each **Claim** or **Related Claims** for which this Policy provides coverage under INSURING AGREEMENT C.

    b.  The "Aggregate for all Claims" amount stated in ITEM 4(C) of the Declarations will be the Underwriter's maximum Limit of Liability for all **Loss**, including **Defense Expenses**, resulting from all **Claims** or **Related Claims** for which this Policy provides coverage under INSURING AGREEMENT C.

(4)    Insuring Agreement D – Evacuation Expense

    a.  The "Each Claim" amount stated in ITEM 4(D) of the Declarations will be the Underwriter's maximum Limit of Liability for all **Loss** resulting from each **Claim** or **Related Claims** for which this Policy provides coverage under INSURING AGREEMENT D.

    b.  The "Aggregate for all Claims" amount stated in ITEM 4(D) of the Declarations will be the Underwriter's maximum Limit of Liability for all **Loss** resulting from all **Claims** or **Related Claims** for which this Policy provides coverage under INSURING AGREEMENT D.

(5)    Insuring Agreement E – Legal/Media Expense

    a.  The "Each Claim" amount stated in ITEM 4(E) of the Declarations will be the Underwriter's maximum Limit of Liability for all **Loss** resulting from each **Claim** or **Related Claims** for which this Policy provides coverage under INSURING AGREEMENT E.

    b. The "Aggregate for all Claims" amount stated in ITEM 4(E) of the Declarations will be the Underwriter's maximum Limit of Liability for all **Loss** resulting from all **Claims** or **Related Claims** for which this Policy provides coverage under INSURING AGREEMENT E.

(6)    Each Limit of Liability described in paragraphs (1) through (5) above shall apply regardless of the time of payment by the Underwriter, the number of persons or entities included within the definition of **Insured,** or the number of claimants, and regardless of whether such **Claim** or **Related Claims** is/are first made during the **Policy Period** or during any **Extended Reporting Period.**

(7)    **Defense Expenses** are part of and not in addition to the Limit of Liability, and payment of **Defense Expenses** by the Underwriter will reduce, and may exhaust, the Limit of Liability.

(8)    The **Insured** shall be responsible for payment in full of the applicable deductible or self-insured retention stated in ITEM 4 of the Declarations, and the Underwriter's obligation to pay **Loss**, including **Defense Expenses**, under this Policy shall be excess of such deductible or self-insured retention. The applicable deductible or self-insured retention shall apply to each **Claim** or **Related Claims** (subject to the applicable aggregate deductible or self-insured retention amount, if any), and shall be eroded (or exhausted) by the **Insured's** payment of **Loss**, including **Defense Expenses**. The Underwriter shall have no obligation whatsoever, either to the **Insured** or any other person or entity, to pay all or any portion of the applicable deductible or self-insured retention on behalf of the **Insured**. The Underwriter shall, however, at its sole discretion, have the right and option to do so, in which event the **Insured** will repay the Underwriter any amounts so paid.

(9)    All **Insureds** under this Policy share the Limit of Liability. In no event will the number of **Insureds** involved in a **Claim** or **Related Claims** increase the Limit of Liability.

(10)    If any **Claim** made against the **Insureds** gives rise to coverage both under this Policy and under any other policy or policies issued by the Underwriter or any affiliate of the Underwriter, the Underwriter's and, if applicable, such affiliate's maximum aggregate limit of liability under all such policies for all **Loss**, including **Defense Expenses**, in respect of such **Claim** will not exceed the largest single available limit of liability under any such policy, including this Policy. In no event will more than one policy issued by the Underwriter respond to a **Claim**.

**(B)**    **Related Claims Deemed Single Claim:**

All **Related Claims**, whenever made, shall be deemed to be a single **Claim**, regardless of:

(1)    the number of **Related Claims**;

(2)    the number or identity of claimants;

(3)    the number or identity of **Insureds** involved or against whom **Related Claims** have been or could be made;

(4)    whether the **Related Claims** are asserted in a class action or otherwise; and

(5)    the number and timing of the **Related Claims**, even if the **Related Claims** comprising such single **Claim** were made in more than one **Policy Period**.

All **Related Claims** will be treated as a single **Claim** made when the earliest of such **Related Claims** was first made, or when the earliest of such **Related Claims** is treated as having been made in accordance with GENERAL CONDITION (D)(2) below, whichever is earlier.

**(C)**    **Defense and Supplementary Payments:**

The Underwriter has the right and duty to defend any **Claim** that is covered by INSURING AGREEMENTS (A), (B), and (C) of this Policy, even if any of the allegations of such **Claim** are groundless, false or fraudulent.  As part of, and not in addition to, the Limit of Liability for INSURING AGREEMENTS (A), (B), and (C), the Underwriter will pay **Defense Expenses** and will:

(1)    pay the premium on any bond to release attachments for an amount not in excess of the Limit of Liability for INSURING AGREEMENTS (A), (B), and (C) of this Policy and the premium on any appeal bond required in any defended suit, provided, that the Underwriter will not be obligated to apply for or furnish any such bond;

(2)    pay all costs taxed against the **Insured** in any such suit;

(3)    provide a legal defense and pay **Defense Expenses** for any arbitration, mediation or other alternative dispute proceeding if:

    (a)    the dispute at issue is a **Claim** covered by this Policy, and

    (b)    the **Insured** provides notice of the proceeding as required by GENERAL CONDITION (D) of this Policy; and

(4)    pay reasonable expenses, plus loss of earnings due to time off from work, incurred by an **Insured** as a result of being a defendant or co-defendant in a **Claim** or at the Underwriter's request, but not to exceed:

    (a)    $500 per day per **Insured**; and

    (b)    $12,500 per **Claim**.

**(D)**     **Reporting of Claims, Occurrences and Circumstances:**

(1)      If, during the **Policy Period** or any **Extended Reporting Period,** any **Claim** for a **Wrongful Act** or an **Occurrence** under INSURING AGREEMENT (A) or (C) is first made against any **Insured**, as a condition precedent to its right to any coverage under this Policy, the **Insured** shall give the Underwriter written notice of such **Claim** as soon as practicable thereafter, but in no event later than:

        (a)      thirty (30) days after the Expiration Date or earlier cancellation date of this Policy; or

        (b)      the expiration of any **Extended Reporting Period**.

     Timely and sufficient notice by one **Insured** of a **Claim** shall be deemed timely and sufficient notice for all **Insureds** involved in the **Claim**. Such notice shall give full particulars of the **Claim**, including, but not limited to, a description of the **Claim**, **Wrongful Act** or **Occurrence**; the identity of the patient, all potential claimants and the health care provider(s) and any **Insureds** involved; a description of the injury or damages that may result from such **Wrongful Act** or **Occurrence**; information on the time, place and nature of the **Wrongful Act** or **Occurrence**; the manner in which the **Insured** first became aware of such **Wrongful Act** or **Occurrence**; and the reasons the **Insured** believes the **Wrongful Act** or **Occurrence** is likely to result in a **Claim.**

(2)      If during the **Policy Period** the **Insured** first becomes aware of any **Wrongful Act** or **Occurrence** that may subsequently give rise to a **Claim** under INSURING AGREEMENT (A) or (C) and:

        (a)      gives the Underwriter written notice of such **Wrongful Act** or **Occurrence** with full particulars as soon as practicable thereafter but in any event before the Expiration Date or earlier cancellation date of this Policy; and

        (b)      requests coverage under INSURING AGREEMENT (A) or (C) of this Policy for any **Claim** subsequently arising from such **Wrongful Act** or **Occurrence**;

     then any **Claim** not otherwise excluded by this Policy subsequently made against the **Insured** arising out of such **Wrongful Act** or **Occurrence** shall be treated as if it had been first made during the **Policy Period**. Full particulars of the **Claim** shall include, but not be limited to, a description of the **Claim**, **Wrongful Act** or **Occurrence**; the identity of the patient; all potential claimants and the health care provider(s) and any **Insureds** involved; information on the time, place and nature of the **Wrongful Act** or **Occurrence**; the manner in which the **Insured** first became aware of such **Wrongful Act** or **Occurrence**; and the reasons the **Insured** believes the **Wrongful Act** or **Occurrence** is likely to result in a **Claim**.

**(E)**   **Defense and Settlement:**

(1)   No **Insured** shall, except at its own cost, incur any expense, make any payment, admit liability for, assume any obligation, or settle any **Claim** without the Underwriter's written consent. With respect to any **Claim,** the Underwriter will have the right to investigate, direct the defense, and conduct settlement negotiations it deems appropriate. The Underwriter may make any settlement of any **Claim** which it deems appropriate.  If the **Insured** refuses to consent to a settlement acceptable to the claimant in accordance with the Underwriter's recommendation, then, subject to the Underwriter's applicable Limit of Liability, the Underwriter's liability for such **Claim** will not exceed:

   (a)   the amount for which such **Claim** could have been settled by the Underwriter plus **Defense Expenses** up to the date on which the **Insured** refused to settle such **Claim**, plus

   (b)   fifty percent (50%) of any **Loss**, including **Defense Expenses**, in excess of the amount in clause (a) above incurred in connection with such **Claim**. (The remaining fifty percent (50%) of **Loss**, including **Defense Expenses**, in excess of the amount in clause (a) above will be carried by the **Insured** at its own risk and will be uninsured.

(2)   The Underwriter will have no obligation to pay **Loss**, including **Defense Expenses**, or continue to direct the defense of any **Insured**, after the applicable Limit of Liability has been exhausted by the payment of **Loss**, including **Defense Expenses**. If the Limit of Liability is exhausted by the payment of **Loss**, including **Defense Expenses**, the premium for this Policy will be fully earned.

(3)   If both **Loss** covered by this Policy and **Loss** not covered by this Policy are incurred, either because a **Claim** made against the **Insureds** includes both covered and uncovered matters, or because a **Claim** is made against both **Insureds** and others not included within the definition of "**Insured**" set forth in DEFINITION (Q) above, the **Insured Entity**, the **Insured Persons** and the Underwriter agree to use their best efforts to determine a fair and proper allocation of all such amounts. The Underwriter's obligation to pay **Loss** under this Policy shall relate only to those sums allocated to the **Insureds**.  In making such determination, the parties shall take into account the relative legal and financial exposures of, and relative benefits obtained in connection with the defense and/or settlement of the **Claim** by the **Insured Persons**, the **Insured Entity** and others.  In the event that the Underwriter and the **Insureds** do not reach an agreement with respect to an allocation, then the Underwriter shall be obligated to make an interim payment of the amount of **Loss**, including **Defense Expenses**, which the parties agree is not in dispute until a final amount is agreed upon or determined pursuant to the provisions of this Policy and applicable law.

**(F)**   **Territory:**

This policy applies to **Wrongful Act**s or **Occurrence**s taking place anywhere in the world.

**Claim** or suit must be made against an **Insured**, however, in the United States of America, including its territories or possessions, Puerto Rico, or Canada.

**(G)**   **Mergers, Acquisitions or Newly Created Entities:**

If, during the **Policy Period,** the **Named Insured** acquires or creates another entity or subsidiary or becomes a member of a joint venture or partner in a partnership, or if the **Named Insured** merges or consolidates with another entity such that the **Named Insured** is the surviving entity (any of which events is referred to as a "Transaction" in this GENERAL CONDITION (G)), the Underwriter will have the option of providing coverage in respect of such entity or subsidiary, and no coverage will be afforded under this Policy for any **Claim** in any way involving the entity or subsidiary that is acquired, created, merged or consolidated with, unless:

(1)   the **Named Insured** gives the Underwriter notice of such Transaction as soon as possible but in no event later than sixty (60) days after the effective date of the Transaction;

(2)   the **Named Insured** gives the Underwriter such information regarding the Transaction as the Underwriter requests; and

(3)   the **Named Insured** accepts any terms, conditions, exclusions, and limitations and pays any additional premium as the Underwriter, at its sole discretion, imposes.

If the Underwriter, at its sole discretion, elects to provide coverage in respect of such entity or subsidiary, this Policy shall not apply to, and the Underwriter will not pay any **Loss** or **Defense Expenses** for, any **Claim** based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving, any **Occurrence** or **Wrongful Act** happening before:

(a)   the effective date of the Transaction; or

(b)   the effective date of coverage under this Policy for such entity or subsidiary as set forth in an endorsement to be issued to extend coverage to such entity or subsidiary, whichever is later.

For purposes of this GENERAL CONDITION (G), "subsidiary" means any entity for which the **Named Insured** owns or possesses fifty percent (50%) of the issued and outstanding capital stock, or has or controls the right to elect or appoint more than fifty percent (50%) of the directors or trustees.

**(H)**   **Sales or Dissolution of Insured Entities; Cessation of Business:**

If, during the **Policy Period**:

(1)   the **Named Insured** is dissolved, sold, acquired by, merged into, or consolidated with another entity such that the **Named Insured** is not the surviving entity; or

(2)      any person, entity, or affiliated group of persons or entities obtains:

      (a)    ownership or possession of fifty percent (50%) of the issued and outstanding capital stock of the **Named Insured,** or;

      (b)    the right to elect or appoint more than fifty percent (50%) of the **Named Insured's** directors or trustees; or

      (c)    if the **Named Insured** ceases to do business for any reason;

(any of which events is referred to as a "Transaction" in this GENERAL CONDITION (H)) coverage under this Policy shall continue in full force and effect until the Expiration Date or any earlier cancellation date, but this Policy shall apply only to **Occurrences** or **Wrongful Acts** happening before the effective date of such Transaction. This Policy will not apply to, and the Underwriter will not pay any **Loss** or **Defense Expenses** for, any **Claim** based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving, any **Wrongful Act** or **Occurrence** happening on or after the effective date of such Transaction.

**(I)**    **Extended Reporting Period for INSURING AGREEMENTS (A) and (C):**

(1)    If this Policy is terminated by any party for any reason other than misrepresentation, fraud or nonpayment of premium, the **First Named Insured** shall have the right to purchase an **Extended Reporting Period**, but only with respect to the coverage afforded under INSURING AGREEMENTS (A) and (C) of this Policy.  In order to purchase the **Extended Reporting Period**, the **First Named Insured**, within thirty (30) days of the termination or the date of such conversion of coverage, must (i) provide written notice by certified mail to the Underwriter requesting the **Extended Reporting Period**, and (ii) pay any additional premium required by the Underwriter promptly when due, together with any earned but unpaid premium which may be due under the terminated policy.  The additional premium shall be deemed fully earned upon inception of the **Extended Reporting Period.**

(2)    The **Extended Reporting Period** will apply only with respect to any **Wrongful Act** or **Occurrence** committed before the effective date of such termination or the date of any conversion of coverage under GENERAL CONDITION (H)(2), whichever is earlier.  The **Extended Reporting Period** will not apply to:

      (a)    any **Claim** for **Professional Services** rendered before the **Retroactive Date** or after the termination date of this Policy;

      (b)    any **Claim** or proceedings pending as of the termination date of this Policy;

      (c)    any paid **Claim**;

      (d)    any **Wrongful Act** or **Occurrence** that is covered under any subsequent insurance purchased by the **Insureds** or that would be covered but for exhaustion of the limit of liability applicable to such **Wrongful Act** or

**Occurrence** under such insurance;

(e)    any **Administration** of the **Insured's Employee Benefit Program** rendered before the **Retroactive Date** or after termination of this Policy; or

(f)    any **Wrongful Act** or **Occurrence** that happened before the **Retroactive Date** of this Policy.

(3)    If an **Extended Reporting Period** is purchased in accordance with clause (1) above, any **Claim** made during such **Extended Reporting Period** shall be deemed to have been made during the **Policy Period.** The Underwriter's **Limit of Liability** in respect of **Claims** made during the **Extended Reporting Period** shall be part of, and not in addition to, the Underwriter's **Limit of Liability** for all **Claims** made during the **Policy Period.** The **Extended Reporting Period** will not be deemed to extend the **Policy Period** or change the scope of coverage provided by this Policy.

**(J)**    **Cancellation; Non-Renewal:**

(1)    The Underwriter may cancel this Policy by mailing written notice to the **First Named Insured** at the last known address shown on the Declarations stating when, not less than sixty (60) days thereafter (or such longer period of time as required by applicable law), such cancellation shall be effective; except that, in the event of cancellation for non-payment of premium, the Underwriter may make the cancellation effective upon notice of only ten (10) days (or such longer period of time as required by applicable law).

(2)    Except as set forth in GENERAL CONDITION (N), the **First Named Insured** may cancel this Policy by mailing the Underwriter written notice stating when, not later than the Expiration Date set forth in ITEM 2(b) of the Declarations, such cancellation will be effective. In such event, the earned premium will be computed in accordance with the customary short rate table and procedure. Premium adjustment may be made either at the time cancellation is effective or as soon as practicable after cancellation becomes effective, but payment or tender of unearned premium is not a condition of cancellation.

(3)    The Underwriter will not be required to renew this Policy upon its expiration.

**(K)**    **Assistance and Cooperation:**

In the event of a **Claim**, the **Insured** shall provide the Underwriter with all information, assistance and cooperation that the Underwriter reasonably requests. At the Underwriter's request, the **Insured** shall assist in investigating, defending and settling **Claims**; enforcing any right of contribution or indemnity against another who may be liable to any **Insured**; and the conduct of actions, suits, appeals or other proceedings, including, but not limited to, attending trials, hearings and depositions; securing and giving evidence; and obtaining the attendance of witnesses.

**(L)**   **Subrogation:**

In the event of any payment hereunder, the Underwriter shall be subrogated to the extent of any payment to all of the rights of recovery of the **Insured**. The **Insured** shall execute all papers and do everything necessary to secure such rights, including the execution of any documents necessary to enable the Underwriter effectively to bring suit in its name. The **Insured** shall do nothing that may prejudice the Underwriter's position or potential or actual rights of recovery. The obligations of the **Insured** under this GENERAL CONDITION (L) shall survive the expiration or termination of the Policy.

**(M)**   **Other Insurance and Risk Transfer Arrangements:**

Any **Loss**, including **Defense Expenses,** resulting from any **Claim** insured under any other insurance policy or risk transfer instrument, including, but not limited to, self-insured retentions, deductibles, fronting arrangements, professional liability policies covering any of the **Named Insured's** medical staff, **Employee**s, **Volunteers** or **Insured Medical Practitioners**, or other alternative arrangements which apply to the **Loss** or **Defense Expenses** shall be paid first by those instruments, policies or other arrangements. It is the intent of this Policy to apply only to **Loss**, including **Defense Expenses,** that are more than the total limit of all deductibles, limits of liability, self-insured amounts or other insurance or risk transfer arrangements, whether primary, contributory, excess, contingent, fronting or otherwise and whether or not collectible. These provisions do not apply to other insurance policies or risk transfer arrangements written as specific umbrella or excess insurance over the applicable Limit of Liability of this Policy. This Policy shall not be subject to the terms of any other policy of insurance or plan or program of self-insurance; and in no event will the Underwriter pay more than the applicable Limit of Liability set forth in ITEM 3 of the Declarations.

**(N)**   **Exhaustion:**

If the Underwriter's Limit of Liability is exhausted by the payment of **Loss**, including **Defense Expenses**, the premium will be fully earned, all obligations of the Underwriter under this Policy will be completely fulfilled and exhausted, and the Underwriter will have no further obligations of any kind or nature whatsoever under this Policy.

**(O)**   **Authorization and Notices:**

The **First Named Insured** will act on behalf of all **Insureds** with respect to the giving or receiving of any notices under this Policy; the payment of premiums to, and receiving of return premiums from, the Underwriter; the receiving and acceptance of any endorsements issued to form a part of this Policy; and the exercising or declining to exercise any Discovery Period.

**(P)**   **Conformance:**

Any terms of this Policy that are in conflict with the laws or regulations of the state in which this Policy is issued are amended to conform with such laws or regulations.

**(Q)     Representation; Incorporation of Application; Entire Agreement:**

The **Insureds** represent that the particulars and statements contained in the Application attached to this Policy are true, accurate and complete and agree that:

(1)     this Policy is issued and continued in force by the Underwriter in reliance upon the truth of such representation;

(2)     those particulars and statements are the basis of this Policy; and

(3)     the Application and those particulars and statements are incorporated in and form a part of this Policy.

No knowledge or information possessed by any **Insured** shall be imputed to any other **Insured**, except for material facts or information known to the person or persons who signed the Application. In the event of any material untruth, misrepresentation or omission in connection with any of the particulars or statements in the Application, this Policy shall be void with respect to any **Insured** who knew of such untruth, misrepresentation or omission or to whom such knowledge is imputed.

**(R)     No Action against Underwriter:**

(1)     No action shall be taken against the Underwriter by any **Insured** unless, as conditions precedent thereto, the **Insured** has fully complied with all of the terms of this Policy and the amount of the **Insured's** obligation to pay has been finally determined either by judgment against the **Insured** after adjudicatory proceedings or by written agreement of the **Insured**, the claimant and the Underwriter.

(2)     No individual or entity shall have any right under this Policy to join the Underwriter as a party to any **Claim** to determine the liability of any **Insured**; nor shall the Underwriter be impleaded by an **Insured** or his, her, or its legal representative in any such **Claim**.

**(S)     Notice:**

(1)     Notice to any **Insured** shall be sent to the **First Named Insured** at the address designated in ITEM 1 of the Declarations.

(2)     Notice to the Underwriter shall be sent to the address designated in ITEM 6 of the Declarations.

**(T)     Changes:**

Notice to or knowledge possessed by any agent or other person acting on behalf of the Underwriter shall not effect a waiver or change in any part of this Policy or prevent or estop the Underwriter from asserting any right(s) under this Policy. This Policy can only be altered, waived, or changed by written endorsement issued to form a part of this Policy.

**(U)**    **Insolvency of Insured:**

The Underwriter will not be relieved of any of its obligations under this Policy by the bankruptcy or insolvency of any **Insured** or his/her/its estate.

**(V)**    **Inspections and Surveys:**

The Underwriter or its duly authorized agent has the right but is not obliged to:

(1)    make inspections and surveys of the **Named Insured's** premises and operations at any time;

(2)    provide the **Insured** with reports on the conditions found;

(3)    recommend changes;

(4)    conduct loss control and prevention activity.

Any inspections, surveys, reports, or recommendations relate only to insurability and the premium to be charged.

The Underwriter does not:

(1)    make safety inspections;

(2)    undertake to perform the duty of any entity to provide for the health or safety of workers or the public; nor

(3)    warrant that conditions:

(a)    are safe or healthy; or

(b)    comply with laws, regulations or codes.

**(W)**    **Examination of Books and Records:**

The Underwriter may examine and audit the books and records of the **Insured** as they relate to this Policy.

**(X)**    **Assignment:**

No assignment of interest under this Policy shall bind the Underwriter without its written consent issued as an endorsement to form a part of this Policy.

**(Y)**    **Entire Agreement:**

The **Insureds** agree that this Policy, including the **Application** and any endorsements, constitutes the entire agreement between them and the Underwriter or any of its agents relating to this insurance.

**(Z)**     **Headings:**

The descriptions in the headings and sub-headings of this Policy are solely for convenience, and form no part of the terms and conditions of coverage.

**In witness whereof the Underwriter has caused this Policy to be executed by its authorized officers.**

ENDORSEMENT NO.  1

HEALTH CARE ORGANIZATIONS AND PROVIDERS
PROFESSIONAL LIABILITY, GENERAL LIABILITY AND
EMPLOYEE BENEFIT LIABILITY POLICY

AMEND DEFINITION OF "INSURED" TO INCLUDE ADDITIONAL INDIVIDUALS

This Endorsement, which is effective at 12:01 a.m. on July 1, 2013, forms part of:

| | |
|---|---|
| Policy No. | MPP-5447-13 |
| Issued to | Devereux Foundation |
| Issued by | Homeland Insurance Company of Delaware |

In consideration of the premium charged, the term "**Insured**," as defined in Section II Definitions of this Policy, is amended to include the following person(s) (each an "Additional Insured"), but only with respect to the specific activities and/or liabilities set forth opposite the name of each such individual:

| Additional Insured | Insured Activity/Liability |
|---|---|
| Foster Parents | Activities performed by or on behalf of the **Named Insured** |
| Funding Sources | Activities performed by or on behalf of the **Named Insured** and/or their placement of clients with the **Named Insured** |
| Governmental Agencies | Activities performed on behalf of the **Named Insured** and/or their placement of clients with the **Named Insured** |
| Landlords | Liability arising out of the negligence and/or legal liability of the **Named Insured** |
| Lessors or Managers of Premises | Liability arising out of the negligence and/or legal liability of the **Named Insured** |
| Lessors of Leased Equipment | Liability arising out of the negligence and/or legal liability of the **Named Insured** |

All other terms, conditions and limitations of the Policy shall remain unchanged.

ENDORSEMENT NO.  2


HEALTH CARE ORGANIZATIONS AND PROVIDERS
PROFESSIONAL LIABILITY, GENERAL LIABILITY AND
EMPLOYEE BENEFIT LIABILITY POLICY


LIMITED WAIVER OF SUBROGATION – INSURING AGREEMENT (A)


This Endorsement, which is effective at 12:01 a.m. on July 1, 2013, forms part of:

| | |
|---|---|
| Policy No. | MPP-5447-13 |
| Issued to | Devereux Foundation |
| Issued by | Homeland Insurance Company of Delaware |


In consideration of the premium charged, solely with respect to any payment made under
INSURING AGREEMENT (A) of this Policy, the Underwriter waives its right to subrogation
under Section IV General Conditions (L) of this Policy with respect to The City of Denver, The
County of Denver and the Denver Department of Human Services.  Section IV General
Conditions (L) of this Policy shall be deemed amended to the extent necessary to affect the
purpose and intent of this endorsement.


All other terms, conditions and limitations of the Policy shall remain unchanged.

ENDORSEMENT NO.  3

HEALTH CARE ORGANIZATIONS AND PROVIDERS
PROFESSIONAL LIABILITY, GENERAL LIABILITY AND
EMPLOYEE BENEFIT LIABILITY POLICY

POLLUTION EXCLUSION

This Endorsement, which is effective at 12:01 a.m. on July 1, 2013, forms part of:

Policy No.    MPP-5447-13
Issued to     Devereux Foundation
Issued by     Homeland Insurance Company of Delaware

In consideration of the premium charged:

1.    Section III Exclusions (B)(18) of this Policy will not apply to any **Claim** for **Bodily Injury** or **Property Damage** arising out of a Short-term Pollution Event (as defined below), provided the Short-term Pollution Event would not have taken place but for a Named Peril (as defined below) having occurred, and the **Insured** notified the Underwriter of such Short-term Pollution Event as soon as practicable but no more than fourteen (14) days after its ending.

2.    For the purposes of this endorsement, the following terms shall have the meanings set forth below:

    (a)    "Named Peril" means:

        (i)    lightning, windstorm or earthquake;

        (ii)    explosion, implosion, collapse, puncture, bursting, rupture, collision, or overturn of a tank, a vessel, machinery, equipment, or other similar apparatus or device (other than an "auto"), including any attached piping, pumps or valves, if the explosion, implosion, collapse, puncture, bursting, rupture, collision, or overturn is not caused by deterioration, corrosion, erosion, decay, rotting or wear and tear; or

        (iii)    vandalism or malicious mischief by someone other than an **Insured**.

    (b)    "Short-term Pollution Event" means a discharge, dispersal, release or escape of **Pollutants** which:

        (i)    begins during the **Policy Period**;

        (ii)    begins at an identified time and place;

(iii)    ends, in its entirety, at an identified time within forty-eight (48) hours of the beginning of the discharge, dispersal, release or escape of the **Pollutants**; and

(iv)    does not originate from an Underground Storage Tank (as defined below).

To be a Short-term Pollution Event, the discharge, dispersal, release or escape of **Pollutants** need not be continuous. However, if the discharge, dispersal, release or escape is not continuous, then all discharges, dispersals, releases or escapes of the same **Pollutants** from essentially the same source, considered together, must satisfy subparagraphs (i) through (iv) of this definition to be considered a Short-term Pollution Event.

(c)    "Underground Storage Tank" means any storage tank, including any attached pumps, valves or piping, buried below the surface of the ground or water, or which, at any time, had been buried under the surface of the ground or water and then subsequently exposed by any means. For the purposes of this definition, buried means that at least 10% of it is below the surface of the ground or water.

All other terms, conditions and limitations of this Policy shall remain unchanged.

ENDORSEMENT NO.  4

HEALTH CARE ORGANIZATIONS AND PROVIDERS
PROFESSIONAL LIABILITY, GENERAL LIABILITY AND
EMPLOYEE BENEFIT LIABILITY POLICY

GRACE PERIOD FOR NOTICE OF CLAIMS UPON RENEWAL OF POLICY

This Endorsement, which is effective at 12:01 a.m. on July 1, 2013, forms part of:

> Policy No.    MPP-5447-13
> Issued to     Devereux Foundation
> Issued by     Homeland Insurance Company of Delaware

In consideration of the premium charged, in the event that this Policy is renewed by the Underwriter:

1.  Clause (1)(a) of General Condition (D) of this Policy is amended to read as follows:

    (a)    sixty (60) days after the Expiration Date or earlier cancellation date of this Policy; or

2.  Clause (2)(a) of General Condition (D) of this Policy is amended to read as follows:

    (a)    the **Insured** gives the Underwriter written notice of such **Wrongful Act** or **Occurrence** with full particulars as soon as practicable thereafter but in no event later than sixty (60) days after the Expiration Date or earlier cancellation date of this Policy; and

It is understood and agreed that the amendments set forth above shall apply *only* in the event this Policy is renewed by the Underwriter.  In the event that this Policy is not renewed by the Underwriter, General Condition (D) of this Policy shall remain unchanged.

All other terms, conditions and limitations of the Policy shall remain unchanged.

ENDORSEMENT NO.  5

HEALTH CARE ORGANIZATIONS AND PROVIDERS
PROFESSIONAL LIABILITY, GENERAL LIABILITY AND
EMPLOYEE BENEFIT LIABILITY POLICY
MINIMUM EARNED PREMIUM ENDORSEMENT

This Endorsement, which is effective at 12:01 a.m. on July 1, 2013, forms part of:

Policy No.     MPP-5447-13
Issued to      Devereux Foundation
Issued by      Homeland Insurance Company of Delaware

In consideration of the premium charged:

It is understood and agreed that, for all purposes under the Policy, premium in the amount
of $55,000 will be deemed fully earned as of the Inception Date set forth in Item 2(a) of
the Declarations.

All other terms, conditions and limitations of this Policy shall remain unchanged.

HPL-P-0024

ENDORSEMENT NO.  6

HEALTH CARE ORGANIZATIONS AND PROVIDERS
PROFESSIONAL LIABILITY, GENERAL LIABILITY AND
EMPLOYEE BENEFIT LIABILITY POLICY
SERVICE OF SUIT ENDORSEMENT

This Endorsement, which is effective at 12:01 a.m. on July 1, 2013, forms part of:

Policy No.    MPP-5447-13
Issued to     Devereux Foundation
Issued by     Homeland Insurance Company of Delaware

In consideration of the premium charged, the Underwriter hereby designates the Director of the Pennsylvania Department of Insurance, and his/her successor(s) in office, as its true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the Insured arising under or out of this Policy.

All other terms, conditions and limitations of this Policy shall remain unchanged.

HPL-P-0025

ENDORSEMENT NO. 7

HEALTH CARE ORGANIZATIONS AND PROVIDERS
PROFESSIONAL LIABILITY, GENERAL LIABILITY AND
EMPLOYEE BENEFIT LIABILITY POLICY

CO-INSURANCE ENDORSEMENT

This Endorsement, which is effective at 12:01 a.m. on July 1, 2013, forms part of:

Policy No.   MPP-5447-13
Issued to    Devereux Foundation
Issued by    Homeland Insurance Company of Delaware

In consideration of the premium charged, it is understood and agreed that, after application of the Deductible described in Section IV General Condition (B) of this Policy, all remaining Limit(s) of Liability shall be subject to co-insurance by the **Insured** in the amount of 75%, such that any **Loss**, including **Defense Expenses**, in excess of the applicable Deductible amount shall be shared equally between the **Insured** and the Underwriter.  It is further understood and agreed that any amounts paid by the **Insured** hereunder shall erode the Limit(s) of Liability set forth in ITEM 3 of the Declarations.

All other terms, conditions and limitations of this Policy shall remain unchanged.

ENDORSEMENT NO. 8

HEALTH CARE ORGANIZATIONS AND PROVIDERS
PROFESSIONAL LIABILITY, GENERAL LIABILITY AND
EMPLOYEE BENEFIT LIABILITY POLICY

AMEND DEFINITION OF "NAMED INSURED" TO INCLUDE ADDITIONAL
ENTITIES WITH SEPARATE RETROACTIVE DATES

This Endorsement, which is effective at 12:01 a.m. on July 1, 2013, forms part of:

| | |
|---|---|
| Policy No. | MPP-5447-13 |
| Issued to | Devereux Foundation |
| Issued by | Homeland Insurance Company of Delaware |

In consideration of the premium charged:

1.     The term "**Named Insured**," as defined in Section II Definitions of this Policy, is amended to include the following entities, but solely with respect to INSURING AGREEMENTS (A) and (C ) and only for **Wrongful Acts** committed or allegedly committed on or after the Retroactive Date set forth opposite the name of each such entity:

| Additional Insured | Retroactive Date |
|---|---|
| Devereux Cleo Wallace | December 13, 1985 |
| La Hacienda | July 1, 1987 |
| Devereux Kids, Inc. | May 19, 1999 |
| Sonoma County | |

2.     Item 6 of the Declarations will be deemed amended to the extent necessary to effect the purpose and intent of this endorsement.

3.     Notwithstanding paragraph 1. above, it is expressly understood and agreed that, for the purposes of Section IV General Conditions (G), (H), (I), (J), (O) and (S) of this Policy, the term "**Named Insured**" shall mean only The Devereux Foundation.

All other terms, conditions and limitations of the Policy shall remain unchanged.

ENDORSEMENT NO.  9

HEALTH CARE ORGANIZATIONS AND PROVIDERS
PROFESSIONAL LIABILITY, GENERAL LIABILITY AND
EMPLOYEE BENEFIT LIABILITY POLICY

AMEND DEFINITION OF "NAMED INSURED" TO INCLUDE
ADDITIONAL ENTITIES

This Endorsement, which is effective at 12:01 a.m. on July 1, 2013, forms part of:

| | |
|---|---|
| Policy No. | MPP-5447-13 |
| Issued to | Devereux Foundation |
| Issued by | Homeland Insurance Company of Delaware |

In consideration of the premium charged:

1.      The term "**Named Insured**," as defined in Section II Definitions of this Policy, is amended to include the entities listed on the schedule attached hereto, but solely with respect to INSURING AGREEMENTS (A) and (C) and only for **Wrongful Acts** committed or allegedly committed on or after the retroactive date set forth in Item 6 of the Declarations (as the same may be amended by endorsement to this Policy).

2.      Notwithstanding paragraph 1. above, it is expressly understood and agreed that, for the purposes of Section IV General Conditions (G), (H), (I), (J), (O) and (S) of this Policy, the term "**Named Insured**" shall mean only The Devereux Foundation.

All other terms, conditions and limitations of the Policy shall remain unchanged.

ENDORSEMENT NO.  10

HEALTH CARE ORGANIZATIONS AND PROVIDERS
PROFESSIONAL LIABILITY, GENERAL LIABILITY AND
EMPLOYEE BENEFIT LIABILITY POLICY

AMEND DEFITION OF "INSURED" TO INCLUDE
INDEPENDENT CONTRACTORS

This Endorsement, which is effective at 12:01 a.m. on July 1, 2013, forms part of:

| | |
|---|---|
| Policy No. | MPP-5447-13 |
| Issued to | Devereux Foundation |
| Issued by | Homeland Insurance Company of Delaware |

In consideration of the premium charged:

1.     The term "**Insured**," as defined in Section II Definitions of this Policy, is amended to include any independent contractor providing **Professional Services** on behalf of the **Named Insured** and under contract with the **Named Insured**, but only when, and to the extent that, such independent contractor is acting on behalf of, and within the scope and capacity of his or her contracted services for, the **Named Insured**.

2.     It is expressly understood and agreed that the coverage afforded under paragraph 1. above shall be specifically excess over, and shall not contribute with, any other valid insurance or self-insurance, regardless of whether such other insurance or self-insurance is stated to be primary, contributing, excess, contingent or otherwise.

3.     The term "independent contractor," as used in this endorsement, shall not include any medical doctor except when such medical doctor is acting as a Medical Director, department head or Chief of Staff for the **Named Insured**, and then only to the extent such individual is acting within the scope and capacity of his or her position as such Medical Director, department head or Chief of Staff for the **Named Insured**.

All other terms, conditions and limitations of the Policy shall remain unchanged.

ENDORSEMENT NO. 11

HEALTH CARE ORGANIZATIONS AND PROVIDERS
PROFESSIONAL LIABILITY, GENERAL LIABILITY AND
EMPLOYEE BENEFIT LIABILITY POLICY

INSURED VS. INSURED CARVEBACK ENDORSEMENT

This Endorsement, which is effective at 12:01 a.m. on July 1, 2013, forms part of:

      Policy No.    MPP-5447-13
      Issued to     Devereux Foundation
      Issued by    Homeland Insurance Company of Delaware

In consideration of the premium charged:

1.     Solely with respect to the coverage afforded under Insuring Agreement (A) of the Policy, Section III Exclusions (D)(6) of this Policy will not apply to **Claims** made against any **Insured Medical Practitioner** or **Insured** who is a registered nurse or licensed practical nurse arising out of his/her rendering of first aid, flu shots or other inoculations to another **Insured**.

2.     Solely with respect to the coverage afforded under Insuring Agreement (B) of the Policy, Section III Exclusions (D)(6) of this Policy will not apply to **Claims** made against any Specific Insured (as defined below) for **Bodily Injury** and/or **Personal Injury** to another **Insured**.

3.     Solely for the purposes of this endorsement, the term "Specific Insured" means the following:

      Any Officer
      Any Executive Director
      Any National Human Resources Director
      Any National Director
      Any Assistant Director
      Any Assistant Center Director

All other terms, conditions and limitations of the Policy shall remain unchanged.

ENDORSEMENT NO.  12

HEALTH CARE ORGANIZATIONS AND PROVIDERS
PROFESSIONAL LIABILITY, GENERAL LIABILITY AND
EMPLOYEE BENEFIT LIABILITY POLICY

MEDICAL EXPENSES FOR BODILY INJURY ENDORSEMENT

This Endorsement, which is effective at 12:01 a.m. on July 1, 2013, forms part of:

Policy No.    MPP-5447-13
Issued to     Devereux Foundation
Issued by     Homeland Insurance Company of Delaware

In consideration of the premium charged:

(1)    Solely with respect to the coverage afforded under Insuring Agreement (B) of the Policy and subject to the terms and conditions set forth in this endorsement, it is understood and agreed that the Underwriter will pay on behalf of the Insured Medical Expenses (as defined below) for the Bodily Injury caused by an accident:

(a)    on premises owned or rented by the Named Insured;

(b)    on ways adjacent to premises owned or rented by the Named Insured; or

(c)    because of the operations of the Named Insured;

provided that:

(i)    such accident takes place in the coverage territory and during the Policy Period;

(ii)    Medical Expenses are incurred and reported to the Underwriter within one year of the date of the accident; and

(iii)    the injured person submits to examination, as often as required by the Underwriter, by physicians of the Underwriter's choice and at the expense of the Underwriter.

(1)    Solely with respect to the coverage afforded by this endorsement:

(a) "Medical Expenses" means reasonable payments for

(iv)    first aid administered at the time of an accident;

HPL-P-0016 Devereux

      (ii)    necessary medical, surgical, x-ray and dental services, including prosthetic devices; and

      (iii)   necessary ambulance, hospital, professional medical and nursing, and funeral services.

(3)    In addition to, and not in limitation of, Section III Exclusions of the Policy, no coverage will be available under this Policy for Bodily Injury sustained by:

    (a)    any Insured;

    (b)   any person hired to do work for or on behalf of any Insured or tenant of any Insured;

    (c)   any person injured on that part of premises owned or rented by the Named Insured that the person normally occupies;

    (d)   any person, whether or not an Employee of any Insured, if benefits for such Bodily Injury are payable or must be provided under workers' compensation or disability benefits or a similar law; or

    (e)   any person injured while engaging in athletic activities.

(4)    The Underwriter's maximum limit of liability for Medical Expenses for Bodily Injury caused by accidents, as set forth in paragraph (1) of this endorsement, is $5,000 for each person per accident. Such amount shall be part of, and not in addition to, the Underwriter's maximum aggregate Limit of Liability set forth in Item 3 of the Declarations.  Notwithstanding the above, in no event shall the Underwriter's maximum obligation to pay Medical Expenses on behalf of the Insured exceed $25,000, which amount shall be part of, and not in addition to, the Underwriter's maximum aggregate Limit of Liability set forth in Item 3 of the Declarations.

(5)    Notwithstanding anything to the contrary contained in the Policy, no Deductible shall apply to the coverage afforded under this endorsement for Medical Expenses for Bodily Injury caused by an accident.

(6)    Solely with respect to the coverage afforded under this endorsement, the definition of "Loss," as set forth in Section II Definitions of the Policy, is amended to include Medical Expenses for Bodily Injury caused by an accident.

All other terms, conditions and limitations of the Policy shall remain unchanged.

ENDORSEMENT NO.  13

HEALTH CARE ORGANIZATIONS AND PROVIDERS
PROFESSIONAL LIABILITY, GENERAL LIABILITY AND
EMPLOYEE BENEFIT LIABILITY POLICY

SEVERABILITY ENDORSEMENT

This Endorsement, which is effective at 12:01 a.m. on July 1, 2013, forms part of:

Policy No.    MPP-5447-13
Issued to     Devereux Foundation
Issued by     Homeland Insurance Company of Delaware

In consideration of the premium charged, it is understood and expressly agreed that Section III Exclusions (D)(3) of this Policy is amended to read in its entirety as follows:

(3)      dishonest, fraudulent, criminal or intentionally malicious act, error or omission by an **Insured**; any willful violation of law, statute, rule or regulation by an **Insured**; or the gaining of any profit, remuneration or advantage by any **Insured** to which such **Insured** was not legally entitled, including, but not limited to, health care fraud; *provided, however*, that this exclusion applies separately to each **Insured**, and any such act, error or omission of any one **Insured** will not reduce or avoid coverage afforded to any other **Insured** hereunder, except with respect to the limits of liability.  No fraudulent, criminal or intentionally malicious act, error or omission of one **Insured** will be imputed to any other **Insured** who was not aware of and did not participate in such act;

All other terms, conditions and limitations of this Policy shall remain unchanged.

ENDORSEMENT NO.  14

HEALTH CARE ORGANIZATIONS AND PROVIDERS
PROFESSIONAL LIABILITY, GENERAL LIABILITY AND
EMPLOYEE BENEFIT LIABILITY POLICY

FIRE DAMAGE COVERAGE ENDORSEMENT

This Endorsement, which is effective at 12:01 a.m. on July 1, 2013, forms part of:

Policy No.    MPP-5447-13
Issued to     Devereux Foundation
Issued by     Homeland Insurance Company of Delaware

In consideration of the premium charged, notwithstanding anything to the contrary contained in the Policy, the Underwriter's maximum aggregate Limit of Liability under the Policy for all Loss resulting from any and all fires caused by, or resulting from, an Insured's negligence and occurring on premises

(1)     rented to the Insured, or

(2)     temporarily occupied by the Insured with the permission of the owner of the such premises shall be $100,000.

All other terms, conditions and limitations of the Policy shall remain unchanged.

HPL-P-0017

ENDORSEMENT NO.  15
HEALTH CARE ORGANIZATIONS AND PROVIDERS
PROFESSIONAL LIABILITY, GENERAL LIABILITY AND
EMPLOYEE BENEFIT LIABILITY POLICY

WAIVER OF SUBROGATION – INSURING AGREEMENT (B)

This Endorsement, which is effective at 12:01 a.m. on July 1, 2013, forms part of:

Policy No.  MPP-5447-13
Issued to  Devereux Foundation
Issued by  Homeland Insurance Company of Delaware

In consideration of the premium charged, Section IV GENERAL CONDITION (L) is amended to read in its entirety as follows:

"(L)  In the event of any payment under INSURING AGREEMENT (A) or (C) of this Policy, the Underwriter shall be subrogated to the extent of any such payment to all of the rights of recovery of the **Insured**. The **Insured** shall execute all papers and do everything necessary to secure such rights, including the execution of any documents necessary to enable the Underwriter effectively to bring suit in its name. The **Insured** shall do nothing after a loss that may prejudice the Underwriter's position or potential or actual rights of recovery. The obligations of the **Insured** under this GENERAL CONDITION (L) shall survive the expiration or termination of the Policy."

All other terms, conditions and limitations of the Policy shall remain unchanged.

HPL-P-0059

ENDORSEMENT NO.  16

EXTENDED REPORTING PERIOD OPTION(S) ENDORSEMENT

This Endorsement, which is effective at 12:01 a.m. on July 1, 2013, forms part of:

Policy No.    MPP-5447-13
Issued to      Devereux Foundation
Issued by     Homeland Insurance Company of Delaware

In consideration of the premium charged, paragraph (1) of Section IV, GENERAL CONDITION I, Extended Reporting Period for INSURING AGREEMENTS (A) and (C), is amended to read in its entirety as follows:

(1)    If this Policy is terminated by any party for any reason other than misrepresentation, fraud or nonpayment of premium, the Named Insured shall have the right to purchase an Extended Reporting Period of:

(a)  Twelve (12) months for an additional premium equal to seventy five percent (75%) of the full annual premium for this Policy; or

(b)  Twenty four (24) months for an additional premium equal to one hundred twenty five percent (125%) of the full annual premium for this Policy; or

(c)  Thirty six (36) months for an additional premium equal to one hundred seventy five percent (175%) of the full annual premium for this Policy,

but only with respect to the coverage afforded under INSURING AGREEMENTS (A) and (C) of this Policy.  In order to purchase the Extended Reporting Period, the Named Insured, within thirty (30) days of the termination or the date of such conversion of coverage, must (i) provide written notice by certified mail to the Underwriter requesting the applicable Extended Reporting Period described above, and (ii) pay the full amount of additional premium required hereunder, together with any earned but unpaid premium which may be due under the terminated policy.  The additional premium shall be deemed fully earned upon inception of the Extended Reporting Period.

All other terms, conditions and limitations of the Policy shall remain unchanged.

ENDORSEMENT NO.  17

HEALTH CARE ORGANIZATIONS AND PROVIDERS
PROFESSIONAL LIABILITY, GENERAL LIABILITY AND
EMPLOYEE BENEFIT LIABILITY POLICY

AMEND DEFINITION OF OCCURRENCE ENDORSEMENT

This Endorsement, which is effective at 12:01 a.m. on July 1, 2013, forms part of:

Policy No.    MPP-5447-13
Issued to      Devereux Foundation
Issued by      Homeland Insurance Company of Delaware

In consideration of the premium charged, the term "**Occurrence**," as defined in Section II Definitions of this Policy, is amended to read in its entirety as follows:

"**Occurrence**" means:

(1)     with respect to **Bodily Injury** or **Property Damage**, an accident, including continuous or repeated exposure to substantially the same harmful conditions, which results in injury or damage neither expected nor intended by the **Insured**; and

(2)     with respect to **Advertising Injury** or **Personal Injury**, a covered offense as set forth in Definitions (B) or Definitions (Z) of this Policy.

All other terms, conditions and limitations of this Policy shall remain unchanged.

ENDORSEMENT NO. 18

HEALTH CARE ORGANIZATIONS AND PROVIDERS
PROFESSIONAL LIABILITY, GENERAL LIABILITY AND
EMPLOYEE BENEFIT LIABILITY POLICY

SPOUSAL EXTENSION FOR INSURING AGREEMENT (B) ENDORSEMENT

This Endorsement, which is effective at 12:01 a.m. on July 1, 2013, forms part of:

|  |  |
|---|---|
| Policy No. | MPP-5447-13 |
| Issued to | Devereux Foundation |
| Issued by | Homeland Insurance Company of Delaware |

In consideration of the premium charged, subparagraph (8) of the term "**Insured**," as defined in Section II Definitions of this Policy, is amended to read in its entirety as follows:

(8)(a)   solely with respect to and limited to coverage afforded under INSURING AGREEMENTS (A) and (B), the lawful spouses of individual **Insureds**;

(b)   solely with respect to and limited to coverage afforded under INSURING AGREEMENT (A), in the event of the death, incapacity, or bankruptcy of an individual **Insured**, the estates, heirs, legal representatives or assigns of such individual **Insured**;

All other terms, conditions and limitations of this Policy shall remain unchanged.

ENDORSEMENT NO.  19


HEALTH CARE ORGANIZATIONS AND PROVIDERS
PROFESSIONAL LIABILITY, GENERAL LIABILITY AND
EMPLOYEE BENEFIT LIABILITY POLICY


AMEND NOTICE OF CANCELLATION ENDORSEMENT

This Endorsement, which is effective at 12:01 a.m. on July 1, 2013, forms part of:

Policy No.    MPP-5447-13
Issued to     Devereux Foundation
Issued by     Homeland Insurance Company of Delaware


In consideration of the premium charged, Section IV General Conditions (J)(1) of this Policy is amended by deleting the phrase "sixty (60) days" therein and replacing it with the phrase "ninety (90) days."


All other terms, conditions and limitations of this Policy shall remain unchanged.

ENDORSEMENT NO. 20
PERSONAL INFORMATION PROTECTION EVENT REIMBURSEMENT
COVERAGE ENDORSEMENT

This Endorsement, which is effective at 12:01 a.m. on July 1, 2013, forms part of:

Policy No.    MPP-5447-13
Issued to     Devereux Foundation
Issued by     Homeland Insurance Company of Delaware

In consideration of the premium charged:

(1)    In addition to the coverage afforded under INSURING AGREEMENTS (A), (B), (C), (D) and (E) of this Policy, the Underwriter will reimburse the **Named Insured**, up to the Limit of Liability set forth in paragraph (2) below and upon satisfactory proof of payment by the **Named Insured**, for **Personal Information Protection Event Expenses** (as defined below) actually paid by the **Named Insured** in connection with a **Personal Information Protection Event** (as defined below) that occurs during the **Policy Period**.

(2)    The maximum aggregate Limit of Liability of the Underwriter for all **Personal Information Protection Event Expenses** resulting from all covered **Personal Information Protection Events** reimbursed under paragraph (1) above shall be $100,000.  Payment of such maximum aggregate Limit of Liability shall terminate the Underwriter's obligation to reimburse any further **Personal Information Protection Event Expenses** under this endorsement.

(3)    The term "**Loss**," as defined in Section II DEFINTIONS of this Policy, is amended to include **Personal Information Protection Event Expenses**.

(4)    Section II DEFINITIONS of this Policy is amended to include the following terms:

(a)    "**Personal Information Protection Event**" means any failure by an **Insured** to maintain the confidentiality of information regarding **Medical Services** or information obtained in connection with **Medical Services,** or any unauthorized release or use of such information by an **Insured**.

(b)    "**Personal Information Protection Event Expenses**" means:

(i)    reasonable fees and costs of attorneys, experts and consultants, including third-party media consultants, incurred in the management or investigation of an actual or alleged **Personal Information Protection Event**;

(ii)     reasonable fees and costs incurred in connection with notification of a **Personal Information Protection Event** to those individuals whose information has been accessed, released or used;

(iii)     reasonable fees and costs of providing credit monitoring services to those individuals whose information has been accessed, released or used in connection with a **Personal Information Protection Event**; and

(iv)     reasonable costs incurred in the management of public relations with respect to a **Personal Information Protection Event**;

provided, that **Personal Information Protection Event Expenses** shall not include any remuneration, salaries, overhead, fees, loss of earning reimbursement or benefit expenses of an **Insured.**

(5)     If, during the **Policy Period**, a **Personal Information Protection Event** occurs, as a condition precedent to its right to any coverage under this endorsement, the **Named Insured** shall give the Underwriter written notice of such **Personal Information Protection Event** as soon as practicable thereafter, but in no event later than thirty (30) days after the Expiration Date or earlier cancellation date of this Policy.  The **Named Insured** shall also provide the Underwriter with all information and documentation as the Underwriter may reasonably require.

All other terms, conditions and limitations of this Policy shall remain unchanged.

ENDORSEMENT NO.  21

ADDITIONAL INSURED ENDORSEMENT - PRIMARY AND NON-CONTRIBUTORY (GL)

This Endorsement, which is effective at 12:01 a.m. on July 1, 2013, forms part of:

| | |
|---|---|
| Policy No. | MPP-5447-13 |
| Issued to | Devereux Foundation |
| Issued by | Homeland Insurance Company of Delaware |

In consideration of the premium charged:

(1)   Solely for the purposes of the coverage afforded under INSURING AGREEMENT (B) of this Policy, and subject to the terms and conditions set forth in this endorsement, the term "**Insured**," as defined in Section II DEFINITIONS of this Policy, is amended to include the person or entity scheduled below with whom/which the **Named Insured** has a written agreement to provide such person or entity additional insured status under this Policy (each an "Additional Insured"), but solely with respect to any liability imposed or sought to be imposed on such Additional Insured as a result of the acts, errors or omissions of an **Insured**.

Additional Insured

- Blanket Basis where required by contract
- The County of Orange

(2)   Subject to the terms and conditions set forth in this endorsement, the coverage provided to an Additional Insured shall be primary and non-contributory with respect to any liability imposed or sought to be imposed on such Additional Insured as a result of the acts, errors or omissions of an **Insured**.

(3)   No coverage will be available under this Policy for **Loss** or **Defense Expenses** for any **Claim** against an Additional Insured based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any actual or alleged act, error or omission of an Additional Insured.

(4)   An Additional Insured's status as an Additional Insured under this Policy shall immediately terminate when the **Named Insured's** agreement to provide such status or obligation to indemnify such Additional Insured terminates.

(5)   The amount, extent and scope of coverage available under this Policy to an Additional Insured will be no greater than the amount, extent and scope of the indemnification available to such Additional Insured as agreed to by the **Named Insured** in the written agreement between the **Named Insured** and such Additional Insured.

(6)   It is understood and agreed that the Additional Insured(s) share in the applicable Limits of Liability set forth in ITEM 4.B. of the Declarations.

All other terms, conditions and limitations of this Policy shall remain unchanged.

ENDORSEMENT NO.  22
AMEND SECTION III EXCLUSION (B)(18) FOR PESTICIDE/HERBICIDE
APPLICATION ENDORSEMENT

This Endorsement, which is effective at 12:01 a.m. on July 1, 2013, forms part of:

Policy No.    MPP-5447-13
Issued to      Devereux Foundation
Issued by      Homeland Insurance Company of Delaware

In consideration of the premium charged:

(1)    Section III Exclusions (B)(18) of this Policy will not apply to the application of
herbicides or pesticides by an **Insured** on property owned by the **Named
Insured**; provided, that such application of herbicides or pesticides meets all
standards of any statute, ordinance, regulation or license requirement of any
federal, state or local government which apply to such application.

(2)    It is understood and agreed that the Underwriter's maximum limit of liability for
all **Loss**, including **Defense Expenses**, resulting from all covered **Claims** based
upon, arising out of, directly or indirectly resulting from, in consequence of, or in
any way involving any actual or alleged application of herbicides or pesticides by
an **Insured** on property owned by the **Named Insured** shall be $1,000,000, which
amount shall be part of, and not in addition to, the Underwriter's Limits of
Liability set forth in ITEM 4 of the Declarations.

All other terms, conditions and limitations of the Policy shall remain unchanged.

ENDORSEMENT NO.  23
ADDITIONAL INSURED ENDORSEMENT

This Endorsement, which is effective at 12:01 a.m. on July 1, 2013, forms part of:

     Policy No.    MPP-5447-13
     Issued to     Devereux Foundation
     Issued by    Homeland Insurance Company of Delaware

In consideration of the premium charged:

(1)     The term "**Insured**," as defined in Section II DEFINITIONS of this Policy, is amended to include the person(s) or entity(ies) listed below (each an "Additional Insured"), but solely with respect to any liability imposed or sought to be imposed on such Additional Insured as a result of the acts, errors or omission of an original **Insured**.

     <u>Additional Insured(s)</u>
     Sachem Central School District
     51 School Street
     Lake Ronkonkoma, NY 11779-2299

(2)     No coverage will be available under this Policy for **Loss** or **Defense Expenses** for any **Claim** against an Additional Insured based solely upon the actual or alleged acts, errors or omissions of an Additional Insured.

(3)     With respect to any **Claim** against an Additional Insured based upon both the acts, errors or omissions of the original **Insured** and the acts, errors or omissions of an Additional Insured, the Underwriter will pay **Defense Expenses** incurred by such Additional Insured in connection with such **Claim** and **Loss** such Additional Insured is legally obligated to pay as a result of the acts, errors or omissions of the original **Insured**, subject in all events to all other terms, conditions and exclusions of this Policy.  No coverage will be available under this Policy for any **Loss** such Additional Insured is obligated to pay as a result of its own acts, errors or omissions.

(4)     Section IV GENERAL CONDITIONS (I)(1) of this Policy is amended by adding the following thereto:

          The Underwriter will provide the Additional Insured(s) with at least ten (10) days' written notice of cancellation of this Policy if such cancellation is for non-payment of premium, or sixty (60) days' written notice of cancellation if such cancellation is for any other reason.

All other terms, conditions and limitations of this Policy shall remain unchanged.

ENDORSEMENT NO.  24
ADDITIONAL INSURED ENDORSEMENT

This Endorsement, which is effective at 12:01 a.m. on July 1, 2013, forms part of:

Policy No.   MPP-5447-13
Issued to     Devereux Foundation
Issued by     Homeland Insurance Company of Delaware

In consideration of the premium charged:

(1)   The term "**Insured**," as defined in Section II DEFINITIONS of this Policy, is amended to include the person(s) or entity(ies) listed below (each an "Additional Insured"), but solely with respect to any liability imposed or sought to be imposed on such Additional Insured as a result of the acts, errors or omission of an original **Insured**.

Additional Insured(s)
 York County Community Policy and Management Team
 301 Goodwin Neck Road
 Yorktown, VA  23692

(2)   No coverage will be available under this Policy for **Loss** or **Defense Expenses** for any **Claim** against an Additional Insured based solely upon the actual or alleged acts, errors or omissions of an Additional Insured.

(3)   With respect to any **Claim** against an Additional Insured based upon both the acts, errors or omissions of the original **Insured** and the acts, errors or omissions of an Additional Insured, the Underwriter will pay **Defense Expenses** incurred by such Additional Insured in connection with such **Claim** and **Loss** such Additional Insured is legally obligated to pay as a result of the acts, errors or omissions of the original **Insured**, subject in all events to all other terms, conditions and exclusions of this Policy.  No coverage will be available under this Policy for any **Loss** such Additional Insured is obligated to pay as a result of its own acts, errors or omissions.

(4)   Section IV GENERAL CONDITIONS (I)(1) of this Policy is amended by adding the following thereto:

The Underwriter will provide the Additional Insured(s) with at least ten (10) days' written notice of cancellation of this Policy if such cancellation is for non-payment of premium, or sixty (60) days' written notice of cancellation if such cancellation is for any other reason.

All other terms, conditions and limitations of this Policy shall remain unchanged.

ENDORSEMENT NO.  25
ADDITIONAL INSURED ENDORSEMENT

This Endorsement, which is effective at 12:01 a.m. on November 6, 2013, forms part of:

Policy No.   MPP-5447-13
Issued to    Devereux Foundation
Issued by    Homeland Insurance Company of Delaware

In consideration of the premium charged:

(1)     The term "**Insured**," as defined in Section II DEFINITIONS of this Policy, is amended to include the person(s) or entity(ies) listed below (each an "Additional Insured"), but solely with respect to any liability imposed or sought to be imposed on such Additional Insured as a result of the acts, errors or omission of an original **Insured**.

Additional Insured(s)
  The Government of the Virgin Islands
  Department of Human Services
  Knud Hansen Complex, Bldg. A
  St. Thomas, VI  08002

(2)     No coverage will be available under this Policy for **Loss** or **Defense Expenses** for any **Claim** against an Additional Insured based solely upon the actual or alleged acts, errors or omissions of an Additional Insured.

(3)     With respect to any **Claim** against an Additional Insured based upon both the acts, errors or omissions of the original **Insured** and the acts, errors or omissions of an Additional Insured, the Underwriter will pay **Defense Expenses** incurred by such Additional Insured in connection with such **Claim** and **Loss** such Additional Insured is legally obligated to pay as a result of the acts, errors or omissions of the original **Insured**, subject in all events to all other terms, conditions and exclusions of this Policy.  No coverage will be available under this Policy for any **Loss** such Additional Insured is obligated to pay as a result of its own acts, errors or omissions.

(4)     Section IV GENERAL CONDITIONS (I)(1) of this Policy is amended by adding the following thereto:

The Underwriter will provide the Additional Insured(s) with at least ten (10) days' written notice of cancellation of this Policy if such cancellation is for non-payment of premium, or sixty (60) days' written notice of cancellation if such cancellation is for any other reason.

All other terms, conditions and limitations of this Policy shall remain unchanged.

ENDORSEMENT NO.  26
MANAGED CARE SERVICES COVERAGE ENDORSEMENT

This Endorsement, which is effective at 12:01 a.m. on November 1, 2013, forms part of:

> Policy No.   MPP-5447-13
> Issued to    Devereux Foundation
> Issued by    Homeland Insurance Company of Delaware

In consideration of the premium charged, solely with respect to **Claims** based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving the rendering of, or failure to render, **Professional Services** in connection with or pursuant to the following contact:

Devereux Community Based Care of Okeechobee and the Treasure Coast – Contract # ZJK85

(1)　　ITEM 4.A. of the Declarations is amended to read in its entirety as follows:

> A.  Healthcare Professional Liability
> 　　Each Claim……………………………………$1,000,000
> 　　Aggregate for all Claims……………………....$3,000,000
> 　　Deductible　　Self-Insured Retention
> 　　Per Claim……………………………..$50,000
> 　　Aggregate ……………………………. N/A

(2)　　For purposes of this endorsement, the term "**Claim Services**" means the following services, but only if performed by an **Insured**: the submission, handling, investigation, payment or adjustment of claims for benefits or coverages under health care or workers' compensation plans.

　　　　Section II DEFINITIONS of this Policy shall be deemed amended to include such term

(3)　　The term "**Managed Care Services**," as defined in Section II DEFINITIONS of this Policy, is amended to read in its entirety as follows:

> "**Managed Care Services**" means any of the following services or activities: **Peer Review**; **Utilization Review**; advertising, marketing, selling, or enrollment for health care or workers' compensation plans; **Claim Services**; establishing health care provider networks; design and/or implementation of financial incentive plans; wellness or health promotion education; development or implementation of clinical guidelines, practice parameters or protocols; triage for payment of **Medical Services**; and services or activities performed in the administration or management of health care or workers' compensation plans.

(4)     The term "**Professional Services**," as defined in Section II DEFINITIONS of this Policy, is amended to read in its entirety as follows:

> "**Professional Services**" means:
>
> (1)     **Medical Services**;
>
> (2)     **Managed Care Services**;
>
> (3)     the activities of an **Insured** as a member of a formal accreditation, standards review or similar professional board or committee, including executing the directives of such board or committee; or
>
> (4)     reviewing the quality of **Medical Services** or providing quality assurance on behalf of the **Named Insured**.

(5)     The term "**Utilization Review**," as defined in Section II DEFINITIONS of this Policy, is amended to read in its entirety as follows:

> "**Utilization Review**" means the process of evaluating the appropriateness or necessity of **Medical Services** provided or to be provided by an **Insured**. **Utilization Review** shall include prospective review of proposed **Medical Services**, concurrent review of ongoing **Medical Services** and retrospective review of already rendered **Medical Services**.

(6)     Section III EXCLUSIONS (D)(12) of this Policy is deleted in its entirety.

(7)     Solely with respect to any **Claim** based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any **Managed Care Services**, no coverage will be available under this Policy for any such **Claim** made by or on behalf of any federal, state or local governmental, regulatory or administrative agency, whether such **Claim** is brought in the name of such agency or by or on behalf of such agency in the name of any other individual or entity.

(8)     Solely with respect to **Claims** for which coverage is provided under this endorsement, it is understood and agreed that the provisions set forth in Endorsement No. 7 to this Policy, "CO-INSURANCE ENDORSEMENT," shall not apply.

All other terms, conditions and limitations of this Policy shall remain unchanged.

ENDORSEMENT NO.  27
ADDITIONAL INSURED ENDORSEMENT

This Endorsement, which is effective at 12:01 a.m. on April 9, 2014, forms part of:

|          |                                          |
|----------|------------------------------------------|
| Policy No. | MPP-5447-13 |
| Issued to | Devereux Foundation |
| Issued by | Homeland Insurance Company of Delaware |

In consideration of the premium charged, the term "**Insured**," as defined in Section II DEFINITIONS of this Policy, shall include the person(s) listed below (each an "Additional Insured"), but only with respect to liability of any such Additional Insured that is based on or arises out of acts, errors or omissions committed or allegedly committed by such Additional Insured in the scope of his/her duties for the **Named Insured**, and only with respect to **Claims** under INSURING AGREEMENT B of this Policy; provided that such **Claim** is also made and continuously maintained against an **Insured**, other than an Additional Insured.

Additional Insured(s)

Shasta County, its elected officials, officers, employees, agents, and volunteers
1810 Market Street
Redding, CA 96001

All other terms, conditions and limitations of this Policy shall remain unchanged.

ENDORSEMENT NO.  28
ADDITIONAL INSURED ENDORSEMENT

This Endorsement, which is effective at 12:01 a.m. on April 28, 2014, forms part of:

Policy No.   MPP-5447-13
Issued to     Devereux Foundation
Issued by    Homeland Insurance Company of Delaware

In consideration of the premium charged:

(1)     The term "**Insured**," as defined in Section II DEFINITIONS of this Policy, is amended to include the person(s) or entity(ies) listed below (each an "Additional Insured"), but solely with respect to any liability imposed or sought to be imposed on such Additional Insured as a result of the acts, errors or omission of an original **Insured**.

        Additional Insured(s)
          The Government of the Virgin Islands
          Department of Health
          1303 Hospital Ground, Suite 10
          St. Thomas, U.S.V.I.  00802-6722

(2)     No coverage will be available under this Policy for **Loss** or **Defense Expenses** for any **Claim** against an Additional Insured based solely upon the actual or alleged acts, errors or omissions of an Additional Insured.

(3)     With respect to any **Claim** against an Additional Insured based upon both the acts, errors or omissions of the original **Insured** and the acts, errors or omissions of an Additional Insured, the Underwriter will pay **Defense Expenses** incurred by such Additional Insured in connection with such **Claim** and **Loss** such Additional Insured is legally obligated to pay as a result of the acts, errors or omissions of the original **Insured**, subject in all events to all other terms, conditions and exclusions of this Policy.  No coverage will be available under this Policy for any **Loss** such Additional Insured is obligated to pay as a result of its own acts, errors or omissions.

(4)     Section IV GENERAL CONDITIONS (I)(1) of this Policy is amended by adding the following thereto:

              The Underwriter will provide the Additional Insured(s) with at least ten (10) days' written notice of cancellation of this Policy if such cancellation is for non-payment of premium, or sixty (60) days' written notice of cancellation if such cancellation is for any other reason.

All other terms, conditions and limitations of this Policy shall remain unchanged.