## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

_____

|  |  |  |
|---|---|---|
| HOMELAND INSURANCE COMPANY OF DELAWARE | : | |
| | : | |
| | : | |
| Plaintiff, | : | Civil Action No. 17-2415 |
| | : | |
| v. | : | |
| | : | |
| THE DEVEREUX FOUNDATION, | : | |
| | : | |
| Defendants. | : | |

_____

## PLAINTIFF, HOMELAND INSURANCE COMPANY OF DELAWARE'S MEMORANDUM OF LAW IN SUPPORT OF ITS OPPOSITION TO DEFENDANT, THE DEVEREUX FOUNDATION'S MOTION TO DISMISS <u>PURSUANT TO RULE 12(B)(6)</u>

## TABLE OF CONTENTS

**Page**

I.  PRELIMINARY STATEMENT ...................................................................................1

II.  FACTS ALLEGED IN AMENDED COMPLAINT ..........................................................3

    A.  Introduction.............................................................................................................3

    B.  Criminal Case Involving Devereux Client Shykir Crew ........................................3

    C.  Johnson's Civil Lawsuit Against Devereux.............................................................4

    D.  Devereux Reported the Johnson Claim on December 16, 2014 ..............................4

III.  LEGAL ARGUMENT.................................................................................................7

    A.  Rule 12(b)(6) Standard ...........................................................................................7

    B.  Claims-Made and Reported Policies are Routinely Enforced .................................8

    C.  Devereux Does Not Dispute That It Did Not Report the Johnson Claim to Homeland During the 2013-2014 Policy ..............................................................9

    D.  Homeland States a Plausible Claim for Relief Under the 2014-2016 Policy Because the "Claim" Was First Made Prior to the Policy Period........................11

        i.  The Writ of Summons is a "Claim".........................................................12

        ii.  Devereux relies upon inapposite case law involving statutory interpretation rather than application of relevant policy language ...........16

    E.  Homeland has Pled Sufficient Facts to Warrant Discovery as to Whether a Claim was First Made Prior to the 2014-2016 Policy Period ...............................19

    F.  Devereux's Proposed Order is Defective Because it Seeks Affirmative Relief....................................................................................................................22

IV.  CONCLUSION........................................................................................................23

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*4th St. Invs., LLC v. Dowdell*,
   340 Fed. Appx. 99 (3d Cir. 2009) ............................................................................ 9

*Ace Am. Ins. Co. v. Underwriters at Lloyds & Cos.*,
   939 A.2d 935 (Pa. Super. 2007) ............................................................................... 9

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ............................................................................................. 7, 8

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ............................................................................................. 7, 8

*Bender v. Pa. Ins. Dep't*,
   893 A.2d 161 (Pa. Cmwlth. 2006) ...................................................................... 16, 17

*Bensalem Township v. Western World Ins. Co.*,
   609 F. Supp. 1343 (E.D. Pa. 1985) ......................................................................... 14

*Carosella & Ferry, P.C. v. TIG Insurance Co.*,
   189 F. Supp. 2d 249 (E.D. Pa. 2001) ...................................................................... 14

*City of Harrisburg v. Int'l Surplus Lines Ins. Co.*,
   596 F. Supp. 954 (M.D. Pa. 1984), *aff'd without opinion*, 770 F. 2d 1067 (3d Cir.
   1985) ...................................................................................................................... 9

*Cmty. Hosp. Alternative for Risk Transfer v. Ario*,
   59 A.3d 63 (Pa. Cmwlth. 2013) .......................................................................... 16, 22

*Cohen & Co. v. North River Ins. Co.*,
   No. 93-1860, 1994 U.S. Dist. LEXIS 3646 (E.D. Pa. March 29, 1994) ....... 14, 15, 20

*Cope v. Ins. Comm'r*,
   955 A.2d 1043 (Pa. Commw. Ct. 2008) .............................................................. 16, 22

*Gervel v. L&J Talent*,
   805 F. Supp. 308 (E.D. Pa. 1992) ........................................................................... 18

*Gustafson v. Alloyd Co.*,
   513 U.S. 561 (1995) ............................................................................................... 18

*Hedges v. United States*,
   404 F.3d 744 (3d Cir. 2005) .................................................................................... 7

*Herron v. Schutz Foss Architects*,
   935 P.2d 1104 (Mont. 1997) ................................................................................... 15

*Home Ins. Co. v. Law Offices of Jonathan DeYoung, P.C.*,
    32 F. Supp. 2d 219 (E.D. Pa. 1998) ................................................................. 14, 19

*Hoyt v. St. Paul Fire & Marine Ins. Co.*,
    607 F.2d 864 (9th Cir. 1979) ................................................................................ 14

*Koppers Co., Inc. v. Aetna Cas. and Sur. Co.*,
    98 F.3d 1440 (3d Cir. 1996) .................................................................................... 9

*LA Weight Loss Ctrs., Inc. v. Lexington Ins. Co.*,
    No. 1560, 2006 Phila. Ct. Com. Pl. LEXIS 127 (Phila. Cnty. March 1, 2006) ............... 8, 9, 12

*Longford v. Atl. City*,
    235 F.3d 845 (3d Cir. 2000) .................................................................................... 8

*McMillen Eng'g, Inc. v. Travelers Indem. Co.*,
    744 F. Supp. 2d 416 (W.D. Pa. 2010) ...................................................................... 20

*Myers v. Shaffer*,
    No. 02:11-cv-01107, 2012 U.S. Dist. LEXIS 117993 (W.D. Pa. 2012) ................................. 8

*Phillips v. Cnty of Allegheny*,
    515 F.3d 224 (3d Cir. 2008) .................................................................................... 7

*Pizzini v. American lnt'l Specialty Lines Ins. Co.*,
    210 F. Supp, 2d 658 (E.D. Pa. 2002) ........................................................................ 9

*Quanta Specialty Lines Ins. Co. v. Investors Capital Corp.*,
    No. 10-0219, 2010 U.S. App. LEXIS 23594 (2d Cir. 2010), *affirming*, 2009 U.S. Dist.
    LEXIS 117689 (S.D.N.Y. 2009) ................................................................................ 14

*Reifer v. Westport Ins. Co.*,
    No. 321-MDA-2015, 2015 Pa. Super. Unpub. LEXIS 4300 (Nov. 20, 2015), *appeal
    denied*, 2016 Pa. LEXIS 1054 (May 24, 2016) ............................................................ 9

*Sikirica v. Nationwide Ins. Co.*,
    416 F.3d 214 (3d Cir. 2005) .................................................................................. 18

*Wolf v. Liberty Ins. Underwriters, Inc.*,
    No. 000066, 2016 Phila. Ct. Com. Pl. LEXIS 359 (Phila. Cnty. October 11, 2016) .............. 14

*Wolfson v. Medical Care Availability & Reduction of Error Fund*,
    39 A.3d 551 (Pa. Cmwlth. 2012) ............................................................................ 20

*Yussen v. Med. Care Availability & Reduction of Error Fund*,
    46 A.3d 685 (2012) ........................................................................................ 16, 17

**Statutes**

28 U.S.C. § 1446 ...................................................................................... 15, 18

28 U.S.C. § 2201 ............................................................................................ 3

28 U.S.C. § 2202 ............................................................................................ 3

40 P.S. § 1303.715 ................................................................................................................ 16

**Rules**

Fed. R. Civ. P. 12 .................................................................................................................. 7

Pa. R.C.P. 1007 ..................................................................................................... 13, 15, 17

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF ITS OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS PURSUANT TO RULE 12(B)(6)**

Plaintiff, Homeland Insurance Company of Delaware ("Homeland"), by and through its
undersigned counsel, hereby submits this Memorandum of Law in Support of its Opposition to
Defendant, The Devereux Foundation's ("Devereux"), Motion to Dismiss the Amended
Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).

## I.    PRELIMINARY STATEMENT

Devereux's long-winded and hyper-analytical Motion to Dismiss the Amended
Complaint mischaracterizes the core issues before this Court by focusing on irrelevant policy
language and relying upon inapposite case law.  Homeland has alleged facts sufficient to state a
claim that Devereux is not entitled to indemnity coverage under two professional liability
policies for a verdict entered against Devereux in the underlying case (the "Johnson Claim").
Devereux received a Writ of Summons in the Johnson Claim on June 20, 2014.  Devereux did
not report the Johnson Claim to Homeland until December of 2014.

Homeland issued a claims-made and reported policy to Devereux for the policy period
July 1, 2013 to July 1, 2014 (the "2013-2014 Policy").  Homeland has sufficiently stated a claim
in the Amended Complaint that the Johnson Claim is not covered under the 2013-2014 Policy
because Devereux did not provide notice of the Johnson Claim to Homeland during the policy
period.

Homeland also issued to Devereux a "claims-made and reported" policy effective from
July 1, 2014 to July 1, 2016 (the "2014-2016 Policy") that provides coverage for "claims" that
are "first made" against Devereux **and** "reported" to Homeland during the policy period.
Homeland contends, and has stated a plausible claim, that Devereux is not entitled to coverage

for the Johnson Claim because the "claim" was "first made" prior to the July 1, 2014 start of the policy period.

Devereux's Motion is entrenched in an erroneous argument that the Johnson Claim *must* be covered under one of the policies, and because a Writ of Summons is not a "claim" under the 2013-2014 Policy, it *must* be a "claim" under the 2014-2016 Policy.  Devereux spins a confusing web of irrelevant and misleading arguments, while ignoring the policy language and the relevant case law.  Devereux's argument that a Writ of Summons does not constitute a "claim" falls flat. The 2014-2016 Policy broadly defines "claim" as "any written notice received by an Insured that any person or entity intends to hold an Insured responsible for a Wrongful Act or an Occurrence."  The Writ of Summons, served on Devereux prior to the policy period, commenced an action against Devereux related to the Johnson Claim, and cannot reasonably be interpreted in any other way.  Devereux relies upon inapposite case law involving statutory construction of "claim" under the Pennsylvania MCARE statute, which is decided in a wholly different context and is expressly confined to the statute.  Devereux also ignores the relevant case law recognizing that a Writ of Summons can be a "claim" under a claims-made and reported insurance policy.

Devereux also argues, without support, that Homeland's analysis is confined to the face of the Writ of Summons itself, and that Homeland and this Court cannot consider any additional facts, such as the fact that Devereux employees testified at a criminal trial related to the Johnson Claim just months before the Writ of Summons was served, and Devereux immediately hired counsel in response to the Writ.  Not only are these facts relevant, but they also create reasonable inferences entitling Homeland to discovery of additional documents and information that Devereux may have obtained during the relevant time period.

Homeland has alleged facts sufficient to state a claim, and Devereux's exhaustive yet misleading and incorrect legal analysis should be rejected.

## II.    FACTS ALLEGED IN AMENDED COMPLAINT

### A.    Introduction

Homeland initiated this action on May 26, 2017 by filing a Complaint (the "Original Complaint") in the United States District Court for the Eastern District of Pennsylvania.  *See* Original Complaint, Dkt. No. 1.  Devereux filed a Motion to Dismiss the Original Complaint, and Homeland responded with an Amended Complaint on August 18, 2017.  *See* Amended Complaint, attached hereto as Exhibit 1.  Homeland seeks a declaration pursuant to 28 U.S.C. §§ 2201 and 2202 that it has no duty to indemnify Devereux for an underlying personal injury lawsuit filed by Eric Johnson that resulted in a jury verdict against Devereux on or about March 17, 2017.  *See generally*, *id*.

### B.    Criminal Case Involving Devereux Client Shykir Crew

Devereux is a behavioral health care organization that, among other things, operates residential treatment facilities that provide treatment to minors. Ex. 1 at ¶ 7.  On the evening of June 22, 2011, Devereux inpatient client Shykir Crew ("Crew") allegedly left Devereux's facility in Glenmoore, Pennsylvania without permission.  *Id*. at ¶ 8.  In the early morning of June 23, 2011, Crew allegedly shot Eric Johnson during an attempted robbery.  *Id*. at ¶ 9.  On November 29, 2011, following several months of investigation that involved, in part, direct communication with representatives from Devereux including the execution of a search warrant, the Philadelphia Police Department arrested Crew and charged him with shooting Eric Johnson.  *Id*. at ¶¶ 10-14.  Two Devereux employees testified during Crew's criminal trial in February of 2014.  On

3

February 18, 2014, Crew was convicted of various crimes related to the shooting.  *Id.* at ¶¶ 15-18.

    **C.**    **Johnson's Civil Lawsuit Against Devereux**

On May 14, 2014, Johnson filed a Praecipe for Writ of Summons in the Philadelphia Court of Common Pleas, formally commencing a civil action against Devereux captioned *Johnson v. Devereux Foundation, et al.*, Docket No. 140501360.  Ex. 1 at ¶ 19.  Devereux received the Writ of Summons on June 20, 2014, which advised that Plaintiff, Eric Johnson, "commenced an action against you."  *Id.* at ¶¶ 20-21.  Counsel for Devereux entered an appearance in the Johnson Claim just four business days later, on June 26, 2014.  *Id.* at ¶ 22.  The Civil Cover Sheet, which was available on the docket when Devereux's lawyers entered their appearances, states that the amount in controversy was "more than $50,000" and identifies the type of case as "tort" and "negligence."  *Id.* at ¶ 23.  Counsel for Devereux attended a Case management Conference in the Johnson Claim on August 22, 2014.  *Id.* at ¶ 24.

Johnson filed a Complaint on October 6, 2014, and eventually a second Amended Complaint on December 23, 2014, alleging that Crew eloped from Devereux's Glenmoore facility on June 22, 2011, traveled to West Philadelphia, and robbed and shot Eric Johnson, causing catastrophic bodily injuries.  Ex. 1 at ¶¶ 25-26.  On March 17, 2017, a civil jury ruled in favor of Eric Johnson in the amount of $11,031,000, finding that Devereux, through its employees, was grossly negligent and a factual cause of Johnson's injuries.  *Id.* at ¶ 29.  Post-trial motions were denied on July 25, 2017 and Devereux is pursuing an appeal.  *Id.* at ¶¶ 29-32.

    **D.**    **Devereux Reported the Johnson Claim on December 16, 2014**

Devereux reported the Johnson Claim to Homeland on December 16, 2014, during the term of Policy No. MPP-6333-14, a "Health Care Organizations and Providers Professional

Liability, General Liability and Employee Benefit Liability Policy" with effective dates of July 1, 2014 to July 1, 2016 ("2014-2016 Policy"). Ex. 1 at ¶ 39. The 2014-2016 Policy provides limits of $10 million for Each Claim, subject to a $4 million Per Claim deductible, applicable to healthcare professional liability claims. *Id*. at ¶ 40. For a claim to be potentially covered under the 2014-2016 Policy, it must be both "first made" against Devereux during the policy period and reported to Homeland during that same policy period. *Id*. at ¶ 49. The 2014-2016 Policy's Insuring Agreement states, in pertinent part:

**I.    INSURING AGREEMENTS**

**(A)    Claims Made Professional Liability Insurance:**

The Underwriter will pay up to the applicable Limit of Liability shown in ITEM 4.A. of the Declarations on behalf of the Insured any Loss that the **Insured** is legally obligated to pay as a result of any covered **Claim** for a **Professional Services Wrongful Act** happening on or after the **Retroactive Date**; provided, that the **Claim** is first made against the **Insured** during the **Policy Period** or applicable Extended Reporting Period, and reported to the Underwriter in accordance with GENERAL CONDITION (C) of this Policy.

*Id*. at ¶ 41. General Condition (C) states as follows:

**(C)    Reporting of Claims, Occurrences and Circumstances:**

(1)    If, during the **Policy Period** or any **Extended Reporting Period**, any **Claim** for a **Wrongful Act** under INSURING AGREEMENT (A) or (C) is first made against any **Insured**, as a condition precedent to its right to any coverage under this Policy, the **Insured** shall give the Underwriter written notice of such **Claim** as soon as practicable thereafter, but in no event later than:

    (a)    thirty (30) days after the Expiration Date or earlier cancellation date of this Policy; or

    (b)    the expiration of any Extended Reporting Period.

*Id*. at ¶ 42.

5

The 2014-2016 Policy defines "claim" to mean "any written notice received by an **Insured** that any person or entity intends to hold an **Insured** responsible for a **Wrongful Act** or an **Occurrence**." Ex. 1 at ¶ 43.

Homeland also issued Policy No. MPP-5447-13 for the policy period July 1, 2013 to July 1, 2014 ("2013-2014 Policy"). Ex. 1 at ¶ 33. The 2013-2014 Policy provides limits of $4 million for Each Claim, subject to a $2 million Per Claim deductible, applicable to healthcare professional liability claims. *Id.* at ¶ 34. The 2013-2014 Policy's Insuring Agreement states, in pertinent part:

**I.   INSURING AGREEMENTS**

**(A)   Claims Made Professional Liability Insurance:**

> The Underwriter will pay up to the applicable Limit of Liability shown in ITEM 4.A. of the Declarations claim on behalf of the **Insured** any **Loss**, including **Defense Expenses**, that the **Insured** is legally obligated to pay as a result of any covered **Claim** for a **Professional Services Wrongful Act** happening on or after the **Retroactive Date**; provided, that the **Claim** is first made against the **Insured** during the **Policy Period** or applicable **Extended Reporting Period**.

*Id.* at ¶ 35. The 2013-2014 Policy includes the following language in the General Conditions section:

**(D)   Reporting of Claims, Occurrences and Circumstances**

(1)   If, during the **Policy Period** or any **Extended Reporting Period**, any **Claim** for a **Wrongful Act** or an **Occurrence** under INSURING AGREEMENT (A) or (C) is first made against any Insured, as a condition precedent to its right to any coverage under this Policy, the **Insured** shall give the Underwriter written notice of such **Claim** as soon as practicable thereafter, but in no event later than:

(a)   thirty (30) days after the Expiration Date or earlier cancellation date of this Policy; or

(b)   the expiration of any Extended Reporting Period.

6

*Id*. at ¶ 36.

The 2013-2014 Policy includes Endorsement No. 4, titled "Grace Period for Notice of Claims Upon Renewal of Policy," which states that if the policy is renewed, Clause (1)(a) of General Condition (D) (in paragraph 21, above), is amended to allow Devereux sixty (60) days after the expiration of the policy period to provide written notice of a claim. Ex. 1 at ¶ 37.

## III.   LEGAL ARGUMENT

### A.   Rule 12(b)(6) Standard

A motion to dismiss pursuant to Rule 12(b)(6) tests the sufficiency of the complaint. "To survive a motion to dismiss, a complaint must contain sufficient factual matter ... to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A defendant moving to dismiss under Rule 12(b)(6) bears the burden of proving that a plaintiff has failed to state a claim for relief. *See* Fed. R. Civ. P. 12(b)(6); *see also Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005).

In deciding a motion to dismiss pursuant to Rule 12(b)(6), courts must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cnty of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (internal quotation and citation omitted). The Third Circuit has explained that, stating a claim "does not impose a probability requirement at the pleading stage," but instead "'simply calls for enough facts to raise a **reasonable expectation that discovery will reveal evidence** of the necessary element." *Id.* at 234 (emphasis added); *cf. Myers v. Shaffer*, No. 02:11-cv-01107, 2012 U.S. Dist. LEXIS 117993,

*14 (W.D. Pa. 2012) ("nothing in *Twombly* or *Iqbal* changed the other pleading standards for a motion to dismiss").  Thus, the issue is not "whether the plaintiffs will ultimately prevail" but "whether they are **entitled to offer evidence** to support their claims." *Longford v. Atl. City*, 235 F.3d 845, 847 (3d Cir. 2000) (emphasis added).

Analyzing claims for the purpose of a motion to dismiss is a "context-specific task" that requires courts to use their "judicial experience and common sense" when ultimately deciding if a plaintiff has pled sufficient factual content to plausibly state a claim for relief.  *Iqbal*, 556 U.S. at 679.  While the Court is not bound to accept as true legal conclusions, it may not dismiss a complaint when a Plaintiff's well-pleaded allegations "nudge … claims across the line from conceivable to plausible."  *Id.* at 680.

### B.    Claims-Made and Reported Policies are Routinely Enforced

Homeland seeks declaratory relief because Devereux failed to meet conditions precedent to coverage under the policies, namely that the Johnson Claim was not both "first made" against Devereux and reported to Homeland during the same policy period.  *See LA Weight Loss Ctrs., Inc. v. Lexington Ins. Co.*, No. 1560, 2006 Phila. Ct. Com. Pl. LEXIS 127, *15 (Phila. Cnty. March 1, 2006) (enforcing a claims-made and reported policy and barring coverage because the claim was "first made outside . . . the policy period" in which it was reported).[1]

Homeland issued "claims-made and reported" policies that only provide coverage for claims that are "first made" against Devereux and "reported" to Homeland during the policy period.  *See* Ex. 1 at ¶ 39-45.  Unlike "occurrence policies," which "protect an insured against occurrences during a policy period, regardless of when the resulting claims are made," claims-made and reported policies "protect against claims made **during the life of a policy** irrespective

---

[1]     A copy of the *LA Weight Loss Ctrs., Inc.* opinion is attached hereto as Exhibit 2.

of when the act giving rise to the claim occurred" as long as the claim is both received and reported during the same policy period. *LA Weight Loss Ctrs., Inc.*, 2006 Phila. Ct. Com. Pl. LEXIS 127 at \*8-9 (emphasis added).[2]   The requirements in the insuring agreement of a claims-made and reported policy "are enforceable" and prevent coverage where a claim is "first made **outside the … policy period**" in which it was reported.  *Id.* at \*15 (emphasis added).   For claims-made and reported policies, the "**insured has the burden of proving that its claim falls within the policy's affirmative grant of coverage**" by demonstrating that a claim was first made and reported within the applicable policy period. *Koppers Co., Inc. v. Aetna Cas. and Sur. Co.*, 98 F.3d 1440, 1446 (3d Cir. 1996) (emphasis added); *Cf. LA Weight Loss Ctrs., Inc.*, 2006 Phila. Ct. Com. Pl. LEXIS 127 at \*8.

### C.    Devereux Does Not Dispute That It Did Not Report the Johnson Claim to Homeland During the 2013-2014 Policy

The majority of Devereux's Motion to Dismiss is rooted in the mistaken belief that this case turns on whether the Writ of Summons constitutes a "claim" as defined by the 2013-2014 Policy.  This argument, as well as Devereux's Motion to Dismiss more broadly, obscures the real issues in this case.

Homeland does not contend, as Devereux puts it, that Devereux "provided late notice" or breached an affirmative obligation to report the Johnson Claim under the 2013-2014 Policy. Simply put, Homeland alleges that Devereux *in fact* did not report the Johnson Claim during that policy period, which means that the claim does not fall within the scope of coverage provided by

---

[2]    Courts in the Commonwealth of Pennsylvania strictly enforce the requirements contained in claims-made and reported policies.  *See e.g.*, *Ace Am. Ins. Co. v. Underwriters at Lloyds & Cos.*, 939 A.2d 935 (Pa. Super. 2007); *Reifer v. Westport Ins. Co.*, No. 321-MDA-2015, 2015 Pa. Super. Unpub. LEXIS 4300, \*1 (Nov. 20, 2015), *appeal denied*, 2016 Pa. LEXIS 1054, \*1 (May 24, 2016); *4th St. Invs., LLC v. Dowdell*, 340 Fed. Appx. 99, 100-101 (3d Cir. 2009); *City of Harrisburg v. Int'l Surplus Lines Ins. Co.*, 596 F. Supp. 954, 962 (M.D. Pa. 1984), *aff'd without opinion*, 770 F. 2d 1067 (3d Cir. 1985); *Pizzini v. American lnt'l Specialty Lines Ins. Co.*, 210 F. Supp, 2d 658, 675 (E.D. Pa. 2002).

that policy.  Devereux admits this fact, and thus concedes as a matter of law that there is no coverage under the 2013-2014 Policy.  Accordingly, Homeland has sufficiently stated a claim under Count II of the Amended Complaint.

Devereux invites the Court to err by arguing that if the Writ of Summons is not a "claim" as defined in the 2013-2014 Policy, then it must, by default, be a "claim" first made in the 2014-2016 Policy.  This argument is flawed for two primary reasons.  First, this "one or the other" scenario Devereux dreams up is simply belied by the policy language.  Specifically, Devereux suggests that the *only* way it could qualify for coverage under the 2013-2014 Policy is if a "claim" was made during the policy period.  Devereux ignores other critical parts of the 2013-2014 Policy.  In "Section IV. General Conditions," the 2013-2014 Policy states that if Devereux provides notice of a wrongful act or occurrence during the policy period "that may subsequently give rise to a Claim," Homeland will provide coverage under the 2013-2014 Policy even if the "claim" is made during a subsequent policy period.  *See* 2013-2014 Policy, Section IV.D.(2), attached as Ex. C to the Amended Complaint.  This policy language contradicts the very foundation of Devereux's argument, as it allows Devereux to report the Johnson Claim and secure coverage under the 2013-2014 Policy regardless of whether it constituted a "claim" as defined in the policy. [3]

Consistent with this approach, the 2013-2014 Policy includes an attachment titled "Claim Reporting Guidelines" that provides guidance to Devereux of "examples of the types of events that should be reported in accordance with the general conditions regarding Reporting of Claims,

---

[3]     Although determining whether the Johnson Claim constitutes a "claim" as defined in the 2013-2014 Policy is not necessary for this motion, the Writ of Summons nonetheless does satisfy the policy definition.  As set forth in more detail below, a Writ of Summons is written notice that a plaintiff is commencing a civil action against Devereux for civil damages.  Devereux's effort to characterize it as some type of inconsequential document is belied by reason and by its own subsequent conduct.

Occurrences and Circumstances under your OneBeacon policy." *See id.* The list of examples includes "lawsuits," "serious injury," "elopement" and "any other event the Insured reasonably believes could result in a Claim under the policy." *Id.* In other words, the policies even when read together do not place Devereux in the untenable situation that it improperly lays out for the Court.

The second flaw in Devereux's argument is that it tries to define the scope of coverage under the 2014-2016 Policy by reliance on the definition of "claim" in the 2013-2014 Policy. However, the 2014-2016 Policy stands on its own and must be interpreted in accordance with its own terms. As set forth below, Homeland has also adequately stated a claim for relief under the 2014-2016 Policy.

### D.   Homeland States a Plausible Claim for Relief Under the 2014-2016 Policy Because the "Claim" Was First Made Prior to the Policy Period

The Insuring Agreement in the 2014-2016 Policy provides coverage only when a "**Claim** is first made against the **Insured** during the **Policy Period** … and reported to the Underwriter in accordance with GENERAL CONDITION (C) of this Policy." Ex. 1 at ¶ 41. The 2014-2016 Policy provided coverage beginning on July 1, 2014. *Id.* at ¶ 39. Homeland alleges that Devereux reported the Johnson Claim to it on December 16, 2014, during the 2014-2016 policy period. *Id.* at ¶ 39. However, Homeland alleges that the Johnson Claim is not covered[4] under the 2014-2016 Policy because the Johnson Claim was not "first made" against Devereux during the policy period as required by the Insuring Agreement.[5] The term "claim" is defined as "any

---

[4]    Devereux inaccurately states (at p. 2) that Homeland alleges the Johnson Claim is *excluded* from coverage. Homeland relies on the basic Insuring Agreement which defines the scope of coverage. Homeland does not rely on any policy exclusions.

[5]    Homeland acknowledges that whether a Writ of Summons constitutes a "claim" is a disputed legal issue in this case. In light of the definition of the term "Claim" within the 2014-2016 Policy, however, Homeland has undoubtedly asserted a plausible claim for declaratory

written notice received by an **Insured** that any person or entity intends to hold an **Insured** responsible for a **Wrongful Act** or an **Occurrence**." *Id.* at ¶ 43. If a "claim" was first made against Devereux prior to the policy period, the claim does not fall within the scope of coverage. Here, Homeland alleges that the Johnson Claim was first made against Devereux prior to the policy period, "at the latest on June 20, 2014, when it was served with the Writ of Summons." Ex. 1 at ¶ 60.

Under Pennsylvania law, it is Devereux's burden to prove that its insurance claim affirmatively meets the necessary elements of the insuring agreement prior to obtaining benefits under the policies. Devereux cannot meet its burden on the basis of facts alleged in the Amended Complaint because the Johnson Claim was not "first made" against Devereux during the policy period. *See LA Weight Loss Ctrs., Inc.*, 2006 Phila. Ct. Com. Pl. LEXIS 127 at *10 (ruling that a precondition for coverage under a claims made policy was not met where "the claim was first made before the … policy period became effective"). Accordingly, Homeland has sufficiently stated a claim under Count I of the Amended Complaint.

### i.     The Writ of Summons is a "Claim"

The central theme of Devereux's Motion to Dismiss is that a Writ of Summons is not, and cannot be, a "claim" under the 2013-2014 Policy. However, the Johnson Claim was reported on December 16, 2014 under the 2014-2016 Policy, and therefore the relevant analysis is whether the "claim" was "first made" against Devereux during that policy period, as defined by that policy. Setting aside the fundamental error of Devereux's analysis and focusing on the 2014-2016 Policy language, the question is whether Homeland has pled facts sufficient to support a finding that the Johnson Claim was "first made" against Devereux prior to the July 1,

---

relief on grounds that the Johnson Claim was first made prior to the policy period in which it was reported.

2014 start date.  In that regard, Homeland alleges that Devereux was served with a Writ of Summons on June 20, 2016.  In addition to the Writ of Summons itself, Homeland also pled facts establishing that Devereux knew exactly what the Writ of Summons related to upon receipt – facts entitling Homeland to discovery as what else Devereux knew, when, and the basis for its knowledge (i.e. additional documents regarding the Johnson Claim).

As set forth above, the 2014-2016 defines claim as "any written notice received by an **Insured** that any person or entity intends to hold an **Insured** responsible for a **Wrongful Act** or an **Occurrence**."  *See* Ex. 1 at ¶ 43.  Prior to the policy period, Devereux was served with a Writ of Summons.  The Writ of Summons names Devereux, six Devereux executives and/or employees, and Shykir Crew as defendants.[6]  Under the Pennsylvania Rules of Civil Procedure, an action may be commenced by filing either a praecipe for Writ of Summons *or* a complaint.  Pa. R.C.P. 1007.  As such, in Pennsylvania, the service of a Writ of Summons is sufficient to commence a civil action.  The Writ of Summons states in no uncertain terms that "Plaintiff" has "commenced an action against you."  *Id*. at ¶ 21.  Homeland also alleges several facts in the Amended Complaint that place the Writ of Summons into context, e.g. just months prior to the Writ of Summons, Devereux employees testified in the criminal trial during which Crew was found guilty of leaving Devereux's facility and shooting Johnson during a robbery, and just days after the Writ of Summons was served, Devereux's lawyers entered an appearance.[7]

---

[6]    Devereux's repeated reference to there being eight defendants, without acknowledging that all but Shykir Crew were Devereux executives or employees, is very misleading.

[7]    Devereux strenuously argues (at pp. 17-18) that the Civil Cover Sheet is not a "pleading," but the policy definition of "claim" does not require a pleading.  Devereux also argues that a Civil Cover Sheet has no evidentiary relevance, but this position lacks case support and common sense.  The Civil Cover Sheet, if known to Devereux, is certainly relevant to whether a "claim" had been made, when it states the amount in controversy and the nature of the claim.

Contrary to Devereux's assertion, there is no "bright line" rule that a Writ of Summons does not constitute a "claim" as defined in a liability policy, because the analysis must start with the language of the policy.  Therefore, courts must analyze the issue in context.  *See*, *e.g.*, *Bensalem Township v. Western World Ins. Co.*, 609 F. Supp. 1343, 1344 (E.D. Pa. 1985) (a claim is a demand against a party for something as a matter of right)[8]; *Carosella & Ferry, P.C. v. TIG Insurance Co.*, 189 F. Supp. 2d 249, 253 (E.D. Pa. 2001) (a claim was made when the insured received a letter from its former client's attorney stating its intention to file a malpractice action); *Home Ins. Co. v. Law Offices of Jonathan DeYoung, P.C.*, 32 F. Supp. 2d 219, 225 (E.D. Pa. 1998) (reasoning that "claim" exists when the insured is put on notice of "a demand for something as a right").  Generally, Pennsylvania federal district courts have held that a Writ of Summons constitutes a "Claim" because it "unambiguously conveys to the defendant that a party is **making a claim** against it" and, thus, "constitutes the **assertion of a claim**."  *Cohen & Co. v. North River Ins. Co.*, No. 93-1860, 1994 U.S. Dist. LEXIS 3646, *5 (E.D. Pa. March 29, 1994) (emphasis added); *cf. Wolf v. Liberty Ins. Underwriters, Inc.*, No. 000066, 2016 Phila. Ct. Com. Pl. LEXIS 359, *10-11 (Phila. Cnty. October 11, 2016) ("**service of the writ**" would have constituted a claim if it was received within the policy period) (emphasis added).[9]

---

[8]      In *Bensalem*, the disputed issue was whether an EEOC letter submitted to the insured before coverage began under a claims-made policy constituted a "claim."  The insured notified its insurer that a "claim" occurred after the EEOC proceedings ended, but before the claimant filed suit.  Ultimately, *Bensalem* held that a claim is a "demand," and that a "claim" occurred sometime during the policy period, without specifying what actually constituted a "claim."  Devereux goes to great lengths to distinguish *Bensalem* from this matter, but focuses on an entirely irrelevant issue involving a notice requirement and ignoring the equivocal nature of the court's holding.  This matter is not about a "notice" requirement and Devereux's analysis of *Bensalem* is both irrelevant and unconvincing.

[9]      Courts throughout the country agree.  *See Hoyt v. St. Paul Fire & Marine Ins. Co.*, 607 F.2d 864 (9th Cir. 1979) (a claim is made when any legal demand or notice is served); *Quanta Specialty Lines Ins. Co. v. Investors Capital Corp.*, No. 10-0219, 2010 U.S. App. LEXIS 23594,

Devereux strains to distinguish these cases with a lengthy and inaccurate hyper-analysis that again misses the broader point, which is that a Writ of Summons *can* constitute a "claim" under a claims-made and reported policy. Devereux starts with *Cohen*, arguing (at 26) that it "has zero applicability to this litigation[.]" This argument is misguided. The holding in *Cohen* is instructive here because the court stated that a "writ of summons unambiguously conveys to the defendant that a party is making a claim." *Cohen & Co.*, 1994 U.S. Dist. LEXIS 3646, at *5. The court did not limit its ruling to the policy at issue, but instead made a categorical and commonsense statement about the nature of information conveyed by a Writ of Summons under Pennsylvania Rule of Civil Procedure 1007. *Id*. In this case, the 2014-2016 Policy defines claim as "any written notice received by an **Insured** that any person or entity intends to hold an **Insured** responsible for a **Wrongful Act** or an **Occurrence**." This broad and unambiguous language is the only policy language that determines whether a Writ of Summons constitutes a claim. In light of the pronouncement in *Cohen*, it is clear that Devereux received a "claim" on June 20, 2014 by Writ of Summons.

---

*1 (2d Cir. 2010), *affirming*, 2009 U.S. Dist. LEXIS 117689 (S.D.N.Y. 2009) (a pre-suit letter demanding damages constitutes a claim); *Herron v. Schutz Foss Architects*, 935 P.2d 1104 (Mont. 1997) (even though it did not contain a monetary demand, a letter from an attorney indicating that he was representing the claimant and asking the insured to contact its insurance carrier constituted a "claim").

### ii.    Devereux relies upon inapposite case law involving statutory interpretation rather than application of relevant policy language

Devereux relies upon several inapposite cases to support its over-reaching argument that a Writ of Summons cannot constitute a "claim."  Those cases involve, and are limited to, interpretations of the Pennsylvania's Medical Care Availability and Reduction of Error ("MCARE") statute, and the federal removal statute, 28 U.S.C. § 1446(b)(1).

Plaintiff's reliance on MCARE jurisprudence is misguided.  Pursuant to the MCARE Act, which governs medical professional liability insurance, the MCARE Fund provides excess medical professional liability coverage over primary malpractice insurance issued by private insurers.  *See Yussen v. Med. Care Availability & Reduction of Error Fund*, 46 A.3d 685, 686 (2012).  Under Section 715 of the MCARE Act, however, the Insurance Department and MCARE Fund assume the role of the primary insurer if: (1) the claim is made more than four years after the breach of contract or tort occurred; (2) the claim is filed within the applicable statute of limitations; and (3) the department received a written request for indemnity and defense within 180 days of the date on which notice of the claim is first given to the participating heath care provider or its insurer. *See* 40 P.S. § 1303.715(a).  The MCARE Act does not define "claim," and thus the body of case law Devereux cites to involve statutory construction.  The case law does *not* involve policy language.

In *Cope*, the Commonwealth Court decided that a writ of summons did not place a doctor on notice that he was *eligible* for Section 715 coverage, because the writ did not enable him to evaluate whether the claim satisfied the first two prongs of Section 715 – whether the claim was made more than four years after the tort occurred and whether it was filed within the applicable statute of limitations.  *See Cope v. Ins. Comm'r*, 955 A.2d 1043, 1046 (Pa. Commw. Ct. 2008). The court noted that the writ did not contain information about the nature of the claims asserted,

the applicable dates, or a description of wrongful acts that would have provided the doctor with the requisite knowledge to determine Section 715 eligibility. *Id.* at 1049. The *Cope* decision has no applicability outside of the Section 715 context.[10] Devereux strains equally hard to find any relevance in the *Bender* decision, which the Commonwealth Court framed as follows: "The sole issue before this Court is whether the language of the MCARE statute entitles the Doctors to first dollar indemnity and cost of defense coverage in an indemnification action that is separate from the underlying malpractice action, to which the doctors were not a party." *Bender v. Pa. Ins. Dep't*, 893 A.2d 161, 162 (Pa. Cmwlth. 2006). There, the court engaged in statutory interpretation to determine the contours of a Section 715 claim; there is no discussion of a writ of summons, let alone language of an insurance policy.

The *Yussen* decision further cements the inapplicability of the MCARE cases to Homeland's Amended Complaint. There, a physician challenged a Commonwealth Court order holding that a claim is made the purposes of Section 715 when a writ of summons is filed. *Yussen*, 46 A.3d at 688. The Pennsylvania Supreme Court ruled that the terms "claims" and "made," undefined in the statute, were ambiguous. Then, using principles of statutory construction, the Court concluded that "**for the purposes of Section 715**, the mere filing of a praecipe for a writ of summons does not suffice to make a claim, **at least in the absence of some notice or demand** communicated to those from whom damages are sought." *Id.* at 692 (emphasis added). Not only did the Supreme Court make clear that its decision was confined to Section 715, but it also broadly concluded that a writ could be a "claim" under the statute if accompanied by "some notice or demand." *Id.* at 691. In addition, the dissenting justices in *Yussen* expressed clear disagreement with the majority's decision: "The filing of a praecipe for a

---

[10]    The *Ario* decision follows *Cope* and is therefore equally inapplicable. *See Cmty. Hosp. Alternative for Risk Transfer v. Ario*, 59 A.3d 63 (Pa. Cmwlth. 2013).

writ of summons is sufficient to commence a civil action. Pa.R.C.P. 1007(1). If it is enough to start a lawsuit, I see no reason to hold it cannot constitute a claim made and filed for purposes of determining coverage under MCARE." *Id*. at 692 (Eakin, J., dissenting).

In sum, the MCARE cases were decided in an entirely different context, and the Pennsylvania Supreme Court in *Yussen* was careful to confine its conclusion to Section 715 of the MCARE statute.  Those cases involved a determination of Section 715 eligibility, i.e. the courts appropriately found that a doctor could not tell from a writ of summons if the tort occurred more than four years earlier and it was filed within the statute of limitations.  Devereux offers the extremely tenuous argument that these cases apply because "Section 715 of the MCARE ACT is nearly identical to the definition of a 'Claim' under the 13-14 Policy." *See* Def. Mot. at p. 20.  This argument falls flat, not only because the 2013-2014 Policy language is not the right definition of "claim," but also because those cases do not interpret policy language definitions of "claim," and the term "claim" in Section 715 is undefined.

Devereux's citation to the removal statute cases only takes the Court on another wild goose chase.  Devereux's argument (at p. 21) that "writs of summons are insufficient for purposes of establishing grounds for removal of state court litigation to federal court" relies upon inapposite case law interpreting the circumstances that permit removal under 28 U.S.C. § 1446(b)(1).

More specifically, *Sikirica* and *Gervel* have absolutely nothing to do with interpreting claims-made policies under Pennsylvania law and have no significance to this case.  In *Sikirca*, the United States Court of Appeals held that a writ of summons does not constitute a "notice of diversity jurisdiction" because the United States Supreme Court has held that only a "complaint" can be an "initial pleading" under U.S.C. § 1446(b)(1).  *Sikirica v. Nationwide Ins. Co.*, 416 F.3d

214, 223 (3d Cir. 2005) (citing *Gustafson v. Alloyd Co.*, 513 U.S. 561(1995); *cf. Gervel v. L&J Talent*, 805 F. Supp. 308 (E.D. Pa. 1992).  The Court emphasized an interest in preserving "a symmetrical and coherent regulatory scheme" that applies the standard for removal jurisdiction consistently.  *Id*.  These cases only establish that a writ of summons does not toll the thirty (30) day period for removing state court litigation to federal court pursuant to 28 U.S.C. § 1446(b)(1). Neither *Sikirca* nor *Gervel* address whether a writ of summons constitutes a "claim" under a claims-made insurance policy.  These decisions are taken out of context and have no analytical relevance to the instant case.

> **E.    Homeland has Pled Sufficient Facts to Warrant Discovery as to Whether a Claim was First Made Prior to the 2014-2016 Policy Period**

Devereux wrongly argues that a Writ of Summons can never be a "Claim" because it does not place the insured on notice of any specific alleged wrongful conduct.  Devereux doubles down on its position by further arguing that even if it knew exactly what the Writ of Summons related to, such knowledge is irrelevant under Pennsylvania law.  This argument is at once unreasonable and unsupported.

Contrary to Devereux's argument, numerous cases exist in which courts have considered the factual context of the insured's receipt of a claim.  In *DeYoung*, an insurer moved for summary judgment seeking, *inter alia*, a declaration that it had no duty to defend or indemnify an insured law firm against a malpractice suit brought by plaintiff Hoisington because the claim was first made against the insured after the policy expired.  *See DeYoung, P.C.*, 32 F. Supp. 2d at 222.  In determining whether "notice of the plaintiff's demand … for money or services" (the relevant definition in that policy) occurred during the policy period, the court analyzed various facts, including the claimant's personal visit to the insured's law office and two (2) letters from the claimant's attorney.  *Id*. at 228.  Although the court found these contacts did not constitute a

"claim" under the applicable claims-made policy, it allowed discovery about communications between the underlying claimant and insured to assess the insured's "subjective knowledge" of whether a "demand for money or services" was actually made. *DeYoung* demonstrates that Homeland is entitled to develop factual evidence regarding Devereux's receipt of the Writ of Summons, its understanding of the import of the Writ of Summons, and whether Devereux received any other communications regarding the Johnson Claim. This alone warrants denial of the Motion to Dismiss.

Likewise, in *Wolfson*, the Commonwealth Court permitted an insurer to take discovery from its insured to determine if it received notice of a medical malpractice claim. *Wolfson v. Medical Care Availability & Reduction of Error Fund*, 39 A.3d 551 (Pa. Cmwlth. 2012). The insured was sued for medical malpractice arising out of a patient's suicide, and the key issue before the court was whether a letter to the insured from the patient's lawyer constituted a "claim" under the applicable claims-made policy. *Id.* To make this determination, the court considered the subjective knowledge of the insured, including: (1) when he received the letter the insured was not aware the patient had committed suicide; (2) when the insured last saw the patient the patient's status was stable; (3) the insured knew the patient was involved in other legal proceedings including a worker's compensation claim; and (4) the letter did not suggest that a malpractice claim may be filed. *Id.* at 555. Devereux also highlights *Wolfson* but fails to recognize the key issue, that Homeland is entitled to investigate Devereux's knowledge of the Johnson Claim, how Devereux interpreted the Writ of Summons, and whether it received any other information regarding the Johnson Claim. *See also Cohen & Co.*, 1994 U.S. Dist. LEXIS 3646 at *1 (assessing what a writ of summons "conveys to the defendant"); *McMillen Eng'g, Inc. v. Travelers Indem. Co.*, 744 F. Supp. 2d 416, 432 (W.D. Pa. 2010) (evaluating "plaintiff's

knowledge" to determine whether a pre-complaint "event, incident, allegation, circumstance, dispute or situation" constituted a claim).

Moreover, Homeland's inclusion of these additional facts in the Amended Complaint serves another purpose: it creates a reasonable inference that Devereux may have received other written communications that Homeland does not know about.  Homeland is entitled to develop proof that the Johnson Claim was first made against Devereux prior to the 2014-2016 policy period, whether by virtue of the Writ of Summons, some additional form of written notice, or other facts showing that Devereux knew that the Writ of Summons itself was a "written notice received by" Devereux that Johnson "intend[ed] to hold an [Devereux] responsible for a Wrongful Act or an Occurrence."[11]

Accordingly, Devereux's argument that the Court can only consider the face of the Writ of Summons itself, and not the surrounding circumstances and context, is incorrect.  Although the purpose of claims-made coverage is to limit coverage to claims that are first made during the policy period, Devereux urges an interpretation of the policy language that would preclude the Court from considering facts showing that Devereux knew, prior to the 2014-2016 policy period, that the Writ of Summons commenced a lawsuit against related to the Johnson shooting.  Specifically, Devereux would have the Court cast aside the fact that, when it received the Writ of Summons, Devereux knew that Crew allegedly escaped from its facility, robbed and shot a man the same night, and was ultimately criminally convicted for the incident.  Devereux would have the Court ignore that it participated in the execution of a search and seizure of Crew's dorm

---

[11]     Devereux sets up and knocks down an irrelevant straw man argument regarding Homeland's allegation that Devereux attended a case management conference in the Johnson Claim.  Devereux's attendance at the case management conference *prior to the complaint being filed* in the Johnson Claim directly contradicts Devereux's effort to downplay the legal significance of a Writ of Summons.

room, and that two employees had testified in Crew's criminal trial just months prior to being

served with the Writ of Summons.  Devereux would also have the Court ignore that Devereux

immediately hired counsel, who entered an appearance just *four business days* after the Writ of

Summons was served.

Devereux argues that it can obscure these facts under the *Ario* and *Cope* decisions, but as

discussed above, those decisions are confined to the Commonwealth Court's interpretation of the

180-day notice provision under Section 715 of the MCARE Act.  *See Ario*, 59 A.3d at 63.

Moreover, the court in *Cope* did not rule that information related to a doctor's understanding of

the circumstances surrounding receipt of a Writ of Summons was not discoverable.  The

Insurance Department argued that the insured doctor, upon receipt of a Writ of Summons, should

have independently investigated whether the writ related to a claim that was eligible for Section

715 coverage.  *See Cope*, 955 A.2d at 1046.  The court determined that under these

circumstances, adopting a subjective standard would make it difficult to determine when the

doctor knew the claim was eligible for Section 715 coverage for purposes of triggering the 180-

day reporting period.  *Id.  Cope* does not translate beyond its specific context.[12]

### F.    Devereux's Proposed Order is Defective Because it Seeks Affirmative Relief

Finally, in the event the Court finds that Homeland failed to state a claim, the Court

should reject the form of order submitted by Devereux.  The order not only seeks dismissal of the

Amended Complaint, but it goes a step further in seeking an affirmative ruling that Homeland is

obligated to provide indemnity coverage for the Johnson Claim.  Devereux bears the burden to

establish that the underlying claim falls within the scope of coverage provided by the policy and

---

[12]    Moreover, Homeland has not pled that Devereux was under an affirmative obligation to investigate for purposes of determining when to report the Johnson Claim to Homeland. This is another example of Devereux mischaracterizing the nature of the dispute to fit within its own misguided analysis.

that it satisfied all terms and conditions precedent to coverage.  Because Devereux hastily sought dismissal of the Amended Complaint without setting forth its own pleading, it has not established facts that entitle it to any affirmative relief.  Accordingly, the proposed form of order should be rejected.

## IV.     **CONCLUSION**

For the forgoing reasons, Homeland has sufficiently pled a claim for declaratory relief because, taking as true the facts contained in the Amended Complaint, and all reasonable inferences drawn therefrom, Devereux failed to meet a "condition precedent" to coverage under either policy.  Accordingly, Devereux's Motion to Dismiss should be denied.  Homeland respectfully requests that this Honorable Court enter the attached Order requiring Devereux to file an Answer to the Amended Complaint within twenty (20) days.

Respectfully submitted,

GORDON & REES
SCULLY MANSUKHANI LLP


By:     /s/ Joseph A. Arnold
          Joseph A. Arnold
          I.D. No. 91103
Dated: October 6, 2017          jarnold@gordonrees.com
          Katharine J. Thompson
          I.D. No. 313741
          kthomspon@gordonrees.com
          Eric C. Rosenberg, Esquire
          I.D. No. 317144
          erosenberg@gordonrees.com
          2005 Market Street, Suite 2900
          Philadelphia, PA 19103
          (215) 717-4008

          *Attorneys for Plaintiff Homeland Insurance
          Company of Delaware*

## <u>CERTIFICATE OF SERVICE</u>

I, Joseph A. Arnold, hereby certify that on October 6, 2017, I caused the foregoing Opposition to Devereux's Motion to Dismiss to be served electronically via ECF upon all counsel of record.

<u>/s/ Joseph A. Arnold</u>
Joseph A. Arnold

1137989/35101340v.1

24