**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

HOMELAND INSURANCE COMPANY :
OF DELAWARE, :
    *Plaintiff*, :
     :      CIVIL ACTION
    v. :      NO. 17-2415
     :
THE DEVEREUX FOUNDATION and :
ERIC JOHNSON, :
    *Defendants*. :

**MEMORANDUM**

**JONES, II  J.**                                             **December 7, 2020**

## I.   INTRODUCTION

The Devereux Foundation ("Devereux") faced an $11 million jury verdict following a civil action in 2017 by Eric Johnson ("Johnson") after he was injured by a Devereux resident in 2011. Devereux and Johnson subsequently reached a settlement agreement whereby Devereux assigned Johnson the right to recover from Devereux's insurer, Homeland Insurance Company ("Homeland").  Homeland then initiated this action against Devereux, seeking a declaratory judgment to clarify that it has no obligation to indemnify Devereux or Johnson for the verdict, as Devereux failed to provide timely notice of the claim—a condition precedent to coverage.  The Parties have cross-moved for summary judgment on the issue of the timeliness of Devereux's notice to Homeland; Homeland has additionally moved for summary judgment on the issue of whether Devereux breached the insurance agreement between the Parties and failed to satisfy a condition precedent to coverage.  For the reasons outlined below, Devereux and Johnson's Partial Motion for Summary Judgment (ECF No. 82) is denied, and Homeland's Cross-Motion for Summary Judgment (ECF No. 84) is granted.  Therefore, Homeland's additional Motion for Summary Judgment (ECF No. 101) is dismissed as moot.

## II.    STATEMENT OF FACTS

Plaintiff/counterclaim Defendant Homeland Insurance Company of Delaware ("Homeland") had long insured Defendant/counterclaim Plaintiff The Devereux Foundation ("Devereux").  (ECF 85; Homeland's Supplemental Statement of Undisputed Facts ("SSF") at ¶ I.1; Ex. H to Johnson and Devereux's Statement of Undisputed Facts ("SUF") at 42:17-44:7). From July 1, 2013 to July 1, 2014, Homeland insured Devereux under Policy No. MPP-5447-13 ("2013-14 Policy"), and from July 1, 2014 to July 1, 2016, Homeland insured Devereux under Policy No. MPP-6333-14 ("2014-16 Policy").  ECF 85; SSF at ¶¶ I.2, I.8; Exs. B and C to SUF. Each policy provided coverage for claims of Professional Services Wrongful Acts made and reported during the Policy Period or Extended Reporting Period.  (ECF 85; SSF ¶¶ I.4, I.10).

As relevant here, the 2013-14 Policy Period concluded on July 1, 2014 and included a sixty-day Extended Reporting Period concluding on August 30, 2014.  (ECF 85; SSF ¶ I.6).  The 2013-14 Policy defined a "claim" as "a written demand received by an insured for monetary damages resulting from a Wrongful Act or Occurrence."  (ECF 49; Third Am. Compl., Ex. C at 43).  The 2014-16 Policy defined a "claim" as "any written notice received by an insured that any person or entity intends to hold an Insured responsible for a Wrongful Act or an Occurrence." (ECF 49; Third Am. Compl., Ex. D at 114).  The 2013-14 Policy provided a coverage limit of $4 million per claim, subject to a $2 million per claim deductible.  (ECF 85; SSF at ¶ I.3).  The 2014-16 Policy provided a coverage limit of $10 million per claim, subject to a $4 million per claim deductible.  (ECF 85; SSF at ¶ I.9).  Both policies contained "OneBeacon Professional Insurance Medical Professional and General Liability Claim Reporting Guidelines," which enumerated the types of events that should be reported under the policies.  (ECF 85; SSF at ¶ 1.15).  For all relevant purposes, OneBeacon and Homeland behaved as a single entity before, during, and after the *Johnson* matter and will be referred to collectively as "Homeland" for clarity.

Early in the morning on June 23, 2011, Philadelphia resident Eric Johnson was shot outside his home.  (ECF 85; SSF at ¶ II.16; ECF 59; Johnson's Answer to Homeland's Compl. at ¶¶ 8-10).  Mr. Johnson identified Devereux resident Shykir Crew as his assailant.  (ECF 85; SSF at ¶¶ 17-18; Ex. 1 to SSF; Ex. 2 to SSF at 170:14-171:3).  Following an investigation and criminal trial, a jury found Mr. Crew guilty of robbery, aggravated assault, carrying a loaded firearm, possession of a firearm by a minor, and possession of an instrument of crime.  (ECF 85; SSF at ¶¶ II.16-42).

Following Mr. Crew's criminal trial, Mr. Johnson instituted a civil negligence suit against Devereux, Crew, and various Devereux employees in their individual capacity ("*Johnson* matter" or "*Johnson* action").  (ECF 85; SSF at ¶¶ 43, 45).  In order to commence the action, Johnson filed a Praecipe for Writ of Summons in the Philadelphia Court of Common Pleas and served the Writ of Summons on Defendants on June 20, 2014.  (ECF 85; SSF at ¶ III.43, III.49-50).  This informed Defendants that Johnson had "commenced an action against [them]," while the Civil Cover Sheet noted the "case type" was a "tort" and stated the amount in controversy is "more than $50,000."  (ECF 85; SSF at ¶¶ 44, 47; ECF 59, 63).  As addressed below, the parties dispute whether the Civil Cover Sheet was in fact attached to the Writ of Summons that Devereux received.  (ECF 92; Memo. in Opp. Homeland's Cross Mot. Summ. J. at 2-3; Third Am. Compl. at ¶¶ 23-24; Ex. 13 to SSF at Ex. B-D).

Upon receipt of the Writ of Summons, Devereux immediately began preparing to defend the case.  That same day, Devereux employee Judy Starr emailed Devereux's then-senior counsel, John Edward Krampf, informing him that she had just received a "civil complaint" and discussing the importance of retaining qualified defense counsel.  (ECF 85; SSF at ¶ 53; Ex. 15 to SSF; Ex. 4 to SSF at 62:17-24).  Three days later, on June 23, 2014, Devereux retained Yost & Tretta, LLP as defense counsel in the *Johnson* matter.  (ECF 85; SSF at ¶ 57; Ex. 16 to SSF).  Ms. Starr then

informed Kathy-Ann Lewis, Devereux's then-Assistant Treasurer, that "[t]he Johnson matter falls under [Devereux's Professional Liability/General Liability policy ("PL/GL")]."  (ECF 85; SSF at ¶¶ 59, 60).  Devereux initially listed the report date of the *Johnson* claim as "6/9/14" in its claims bordereaux for the fiscal year ending June 30, 2014; however, the report date had been changed to reflect "12/16/14" in the claims bordereaux for the fiscal year ending June 30, 2015.  (ECF 85; SSF at ¶¶ 72-74; Exs. 21 and 22 to SSF).

Richard Yost began reviewing the *Johnson* matter and communicating with Johnson's counsel, William Davis, on June 25, 2014, and he officially entered an appearance in the action on June 26, 2014.  (ECF 85; SSF at ¶¶ 82-83).  The Court of Common Pleas scheduled a Case Management Conference for the *Johnson* action to be held on August 22, 2014.  (ECF 85; SSF at ¶¶ 87, 92).  In accordance with this conference, Mr. Yost requested Devereux's insurance coverage for the matter; in response, Ms. Lewis provided the 2013-14 Policy.  (ECF 85; SSF at ¶¶ 88-91).  On October 6, 2014, Eric Johnson officially filed a Complaint after Devereux ruled him to do so. (ECF 85; SSF at ¶¶ 99-100; Ex. B to SSF).

Homeland's claims adjuster, Nancy Morel, received notice of the *Johnson* claim on November 24, 2014, when Devereux forwarded her a spreadsheet of its active PL/GL claims in advance of the following day's claims review meeting.  (ECF 85; SSF at ¶¶ 106, 110; Ex. 39 to SSF; Ex. 19 to SSF at 144:1-147:4).  The spreadsheet listed the report date of the *Johnson* claim as June 19, 2014.  (ECF 85; SSF at ¶ 108; Ex. 39 to SSF at line 219).  Despite this report date, Ms. Morel informed Ms. Lewis on December 9, 2014, that Homeland had no record of receiving notice of the *Johnson* claim.  (ECF 85; SSF at ¶ 110; Ex. 19 to SSF at 144:1-147:4).  Shortly thereafter, Devereux officially reported the *Johnson* claim to Homeland by emailing the company a copy of the one-page Writ of Summons and the Complaint.  (ECF 85; SSF at ¶ 113; SUF at ¶ 45; Ex. G to

SUF).  On January 14, 2015, Homeland issued Devereux a letter describing its current coverage position for the *Johnson* matter; the letter stated the 2014-16 Policy applied but expressly reserved Homeland's rights to "limit or deny coverage on additional or alternative bases" as they became known.  (ECF 85; SSF at ¶ 118; Ex. G to SUF).  Homeland discovered in April 2017 that Devereux had received the Writ of Summons in June 2014.  (ECF 85; SSF at ¶ 119; Ex. 64 to SSF at 59:9-60:25).

Between June and September 2015, Mr. Yost engaged in cost-of-defense settlement discussions with Mr. Davis.  (ECF 85; SSF at ¶¶ 137-149: Ex. 53 to SSF; Ex. 54 to SSF; Ex. 4 to SSF at 122:17-125:20; Ex. 55 to SSF; Ex. 28 to SSF at 59:3-60:3; Ex. 4 to SSF at 130:5-131:5; Ex. 56 to SSF; Ex. 28 to SSF at 67:8-68:9; Ex. 57 to SSF; Ex. 58 to SSF).  Mr. Yost and Mr. Davis failed to reach an agreement, and settlement discussions broke down when Mr. Johnson retained counsel from Kline & Specter.  (ECF 85; SSF at ¶¶ 144, 149-50; Ex. 28 to SSF at 67:8-68:9; Ex. 60 to SSF at 147:2-148:5).  Homeland was not involved at any stage of the settlement discussions or the subsequent trial.  (ECF 85; SSF at ¶ 135; Ex. 28 to SSF at 74:12-76:4; Ex. 4 to SSF at 96:6-24).  Ultimately, a jury awarded an $11,031,000 verdict to Mr. Johnson after finding Devereux's gross negligence was a factual cause of his injuries.  (ECF 82; SUF at ¶¶ 30-31).  Devereux and Mr. Johnson thereafter reached a settlement agreement under which Devereux assigned him the right to recovery under its 2013-14 and/or 2014-16 Policies.  (ECF 82; SUF at ¶¶ 55-56).

Homeland then initiated the present action by filing a Complaint against Devereux on May 26, 2017.  (ECF 1).  Homeland filed an Amended Complaint on August 18, 2017 and a second Amended Complaint on December 12, 2018.  (ECF 10, 43).  Mr. Johnson was joined as a co-Defendant in the action in December of 2018; as Mr. Johnson stood in Devereux's shoes throughout as assignee of its rights to recover under the policies, the parties will be referred to

hereinafter collectively as "Devereux" for clarity.  (ECF 43, 44).  Homeland filed its third and final Amended Complaint in this action on December 19, 2018, seeking a declaratory judgment that it has no obligation to indemnify Devereux under either of the policies under which Homeland insured Devereux between 2013 and 2016.  (ECF No. 49).  Devereux moved for partial summary judgment on the grounds that: 1) the writ of summons Devereux received in the *Johnson* matter did not constitute a claim under either the 2013-14 Policy or the 2014-16 Policy; 2) Devereux provided timely notice of a claim in the *Johnson* matter under the 2014-16 Policy; and 3) the 2014-16 Policy is applicable to the *Johnson* matter.  (ECF 82; Devereux and Johnson's Joint Mot. for Part. Summ. J.).

Homeland then cross-moved for summary judgment on the grounds that: 1) the writ of summons Devereux received in the *Johnson* matter constituted a claim under both the 2013-14 Policy and the 2014-16 Policy; 2) Devereux failed to timely report a claim in the *Johnson* matter to Homeland and thus failed to satisfy a condition precedent in the parties' insurance agreements; and 3) there is no basis in law or fact to find that Homeland is estopped from denying Devereux coverage in the *Johnson* matter.  (ECF 84; Homeland's Cross Mot. for Summ. J.).  Homeland also moved for summary judgment on the separate grounds that Devereux had materially breached the parties' insurance agreement by failing: 1) to keep Homeland apprised of settlement discussions in the *Johnson* matter, and 2) to provide timely notice of the claim and thus satisfy a condition precedent to coverage.  (ECF 101).

## III.   STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56(a), a court shall grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine [dispute] as to any material fact and that the moving party is entitled to a summary judgment as a matter of law."  *Celotex Corp. v. Catrett*, 477 U.S.

317, 322 (1986); Fed. R. Civ. P. 56(a).  "If the moving party meets its burden, the burden shifts to the nonmoving party to go beyond the pleadings and come forward with specific facts showing that there is a genuine issue for trial." *Santini v. Fuentes*, 795 F.3d 410, 416 (3d Cir. 2015) (internal citations and quotation marks omitted).  Therefore, in order to defeat a motion for summary judgment, the non-movant must establish that the disputes are both: (1) material, meaning concerning facts that will affect the outcome of the issue under substantive law; and (2) genuine, meaning the evidence must be such that a reasonable jury could return a verdict for the nonmoving party.  *Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 248 (1986).

"Although the initial burden is on the summary judgment movant to show the absence of a genuine issue of material fact, 'the burden on the moving party may be discharged by "showing"—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case' when the nonmoving party bears the ultimate burden of proof." *Singletary v. Pa. Dep't of Corr.*, 266 F.3d 186,193 (3d Cir. 2001) (quoting *Celotex*, 477 U.S. at 325).  "[A] nonmoving party must adduce more than a mere scintilla of evidence in its favor and cannot simply reassert factually unsupported allegations contained in its pleadings[.]" *Williams v. West Chester*, 891 F.2d 458, 460 (3d Cir. 1989) (citation omitted).  Accordingly, summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.  To that end, however, "conclusory, self-serving affidavits are insufficient to withstand a motion for summary judgment." *Kirleis v. Dickie, McCamey & Chilcote, P.C.*, 560 F.3d 156, 161 (3d Cir. 2009) (citing *Blair v. Scott Specialty Gases*, 283 F.3d 595, 608 (3d Cir. 2002)) (internal quotation marks omitted).  Instead, an affiant must set forth specific facts that reveal a genuine issue of material fact. *Id*.

A court must "view the facts and any reasonable inferences drawn therefrom in the light most favorable to the party opposing summary judgment." *InterVest, Inc. v. Bloomberg, L.P.*, 340 F.3d 144, 160 (3d Cir. 2003).  However, if a party fails to properly address another party's assertion of fact, a court may consider the fact undisputed and grant summary judgment.  *See* Fed. R. Civ. P. 56(3)(2)-(3); *see also Judge C. Darnell Jones II Chambers Policies and Procedures* (rev'd Dec. 2, 2016), http://www.paed.uscourts.gov/documents/procedures/jonpol.pdf ("The Court will not consider any description of a fact that is not supported by citation to the record.  Statements of Material Facts in support of or in opposition to a motion for summary judgment must include specific and not general references to the parts of the record that support each of the statements, such as the title of or numbered reference to a document, the name of a deponent and the page(s) of the deponent's deposition, or the identity of an affidavit or declaration and the specific paragraph relied upon.  Pinpoint citations are required.").

## IV.    DISCUSSION

### A.    Parties' Cross-Motions for Summary Judgment Seeking Declaratory Judgments as to Coverage

Devereux and Homeland have cross-moved for summary judgment, each seeking a declaratory judgment concerning Homeland's coverage obligation to Devereux with regards to the *Johnson* matter.  Specifically, Devereux has asked the Court to declare that: 1) the writ of summons Devereux received in the *Johnson* matter did not constitute a claim under either the 2013-14 Policy or the 2014-16 Policy; 2) Devereux provided timely notice of a claim in the *Johnson* matter under the 2014-16 Policy; and 3) the 2014-16 Policy is applicable to the *Johnson* matter.  (ECF 82; Devereux and Johnson's Joint Mot. for Part. Summ. J.).  Conversely, Homeland has asked the Court to declare that: 1) the writ of summons Devereux received in the *Johnson* matter constituted a claim under both the 2013-14 Policy and the 2014-16 Policy; 2) Devereux failed to timely report

a claim in the *Johnson* matter to Homeland and thus failed to satisfy a condition precedent in the parties' insurance agreements; and 3) there is no basis in law or fact to find that Homeland is estopped from denying Devereux coverage in the *Johnson* matter.  (ECF 84; Homeland's Cross Mot. for Summ. J.).

The interpretation of an insurance policy is a question of law for the court.  *Duncan v. Omni Ins. Co.*, 210 F. Supp. 3d 652, 654 (E.D. Pa. 2016) (citing *Pac. Indem. Co. v. Linn*, 766 F.2d 754, 760 (3d Cir. 1985); *401 Fourth St. Inc. v. Inv'rs Ins. Grp.*, 879 A.2d 166, 171 (Pa. 2005)). Therefore, a Court can decide on a motion for summary judgment whether an insurance claim is covered by a policy.  *Verticalnet Inc. v. U.S. Specialty Ins. Co.*, 492 F. Supp. 2d 452, 456 (E.D. Pa. 2007) (citing *Butterfield v. Giuntoli*, 670 A.2d 646, 651 (Pa. Super. Ct. 1995)).  Here, this Court finds the writ of summons served on Devereux in June 2014 satisfied the definition of a claim under both the 2013-14 and 2014-16 Policies.  As such, Devereux failed to report the claim within the time limits provided by the 2013-14 Policy and is not entitled to coverage.  Further, Homeland is not obligated under a theory of estoppel to provide coverage in spite of this reporting failure.  Therefore, Devereux's motion for partial summary judgment is denied, and Homeland's cross-motion for summary judgment is granted.

### 1.   Determining Whether 2013-14 or 2014-16 Policy Applies to *Johnson*

The primary issue to be resolved by the parties' cross-motions for summary judgment is determining which insurance policy applies to the *Johnson* matter: the 2013-14 Policy or the 2014-16 Policy.  This determination rests on whether the Writ of Summons served on Devereux in June 2014 satisfied the definition of a claim under either or both of the policies.  For the reasons outlined below, this Court finds that the Writ of Summons constituted a claim as that term is defined in

both policies and, therefore, must have been reported during the 2013-14 Policy period in order to qualify for coverage.

### a)  Language of Policies

In order to determine the meaning of an insurance policy provision, the Court must read the policy as a whole and construe its meaning according to its plain language. *Meyer v. CUNA Mut. Ins. Soc.*, 648 F.2d 154, 163 (3d Cir. 2011) (citing *Frog, Switch & Mfg. Co., Inc. v. Travelers Ins. Co.*, 193 F.3d 742, 746 (3d Cir. 1999); *Melrose Hotel Co. v. St. Paul Fire and Marine Ins. Co.*, 432 F. Supp. 2d 488, 495 (E.D. Pa. 2006)).   Where the policy's language is clear and unambiguous, courts give effect to that language. *Verticalnet*, 492 F. Supp. 2d at 456-57 (citing *Standard Venetian Blind Co. v. American Empire Ins. Co.*, 469 A.2d 563, 566 (Pa. 1983)).   Under Pennsylvania law, the insured has the burden of establishing coverage under an insurance policy. *Fishman v. Hartford*, 980 F. Supp. 2d 672, 678 (E.D. Pa. 2013) (citing *Nationwide Mut. Ins. Co. v. Cosenza*, 258 F.3d 197, 206 (3d Cir. 2001) (citations omitted)).   However, the insurer bears the burden of proving the applicability of any exclusions or limitations on coverage. *Fishman*, 980 F. Supp. 2d at 678 (citing *Koppers Co., Inc. v. Aetna Cas. & Sur. Co.*, 98 F.3d 1440, 1446 (3d Cir. 1996)).   Courts must construe coverage clauses broadly and exclusions strictly. *Westport Ins. Corp. v. Bayer*, 284 F.3d 489, 498 n. 7 (3d Cir. 2002) (citing *Eichelberger v. Warner*, 434 A.2d 747, 750 (1981)); *Petrosky v. Allstate Fire & Cas. Ins. Co.*, 141 F. Supp. 3d 376, 384 (E.D. Pa. 2015).

In the instant matter, both parties argue the definitions of a claim under both the 2013-14 and 2014-16 Policies were unambiguous.  (ECF 85; Memo. in Supp. Homeland's Cross Mot. Summ. J. at 21; ECF 82; Memo. in Supp. Devereux and Johnson's Part. Mot. Summ. J. at 3).  This court agrees.  The 2013-14 Policy entered into by Devereux and Homeland clearly defined a claim

as "a written demand received by an insured for monetary damages resulting from a Wrongful Act or Occurrence."  (ECF 49; Third Am. Compl., Ex. C at 43).  The Writ of Summons Devereux received in June 2014 satisfied this criteria. It notified Devereux that Eric Johnson "[had] commenced an action against [them]."  The civil cover sheet included with the writ of summons further noted that the claim was for a tort of negligence and that more than $50,000 in damages were at issue.  (ECF 85; Ex. C to Homeland's Statement of Disputed and Undisputed Material Facts ("SDMF")).

The parties heavily dispute whether Devereux actually received the civil cover sheet in connection with the Writ of Summons in May 2014 and thus, whether it had on hand a demand "for monetary damages" stemming from "a Wrongful Act or Occurrence."  Devereux contends there is a complete lack of evidence that it received a cover sheet.  (ECF 92; Memo. in Opp. Homeland's Cross Mot. Summ. J. at 2-3).  However, this is unpersuasive.  For one, the Pennsylvania Rules of Civil Procedure require that a civil cover sheet be attached to any pleading commencing an action or submitted within twenty days of the service of the pleading.  Pa. R. Civ. P. 205.2(b)(1).  Judy Starr, in-house counsel for Devereux during the *Johnson* matter, was aware of this requirement.  (ECF 85; Ex. 4 to SSF at 45:17-24).

Further, Homeland notes the civil cover sheet was available with the writ of summons in the electronic docket related to the underlying *Johnson* matter when Devereux's attorneys entered their appearance on June 26, 2014.  (Third Am. Compl. at ¶¶ 23-24; Ex. 13 to SSF at Ex. B-D).  *See also Walck v. Dep't of Transp., Bureau of Driver Licensing*, 625 A.2d 1276, 1278 (Pa. Commw. 1993) ("An attorney is the agent of his client and, as such, acts he performs and statements he makes within the scope of his employment and authority are binding on his client."); *W.C.A.B. v. The Evening Bulletin*, 445 A.2d 1190, 1192 (1982) ("It is well settled in the law of

this jurisdiction that knowledge of an agent acting within the scope of his authority is imputed to the principal, and therefore, knowledge of the agent is knowledge of the principal.").  Devereux's conclusory statements to the contrary, unsupported by evidence, are insufficient to establish a genuine issue of material fact on this point.

Other language in the parties' insurance agreement also supports the characterization of the *Johnson* Writ of Summons as a claim.  Both the 2013-14 and 2014-16 Policies include the following language:

> "Following are examples of the types of events that should be reported in accordance with the general conditions regarding Reporting Claims, Occurrences, and Circumstances under your One Beacon Policy: [...] Events reported to the state Department of Health, other regulatory body, or police; [...] Serious injury (including, but not limited to, paraplegia; quadriplegia; or severe neurological impairment); Elopement; [...] Oral or written demands for damages; Lawsuits; Communication from an attorney regarding any of the events noted above; [...] Any other event the Insured reasonably believes could result in a Claim under the policy."

(ECF 82; Ex. B to SUF at 38; Ex. C to SUF at 108).

This language leaves open the possibility that the enumerated events may be either claims or occurrences. The difference between the two under the policies is that occurrences are to be reported as "major risk events" that may or may not ripen into lawsuits, while claims indicate the initiation of a lawsuit and trigger the terms of the policies.  (ECF 85; Ex. 19 to SSF at 95:2-12). In her deposition testimony, Kathy Ann Lewis, Devereux's then-Assistant Treasurer, offered conflicting explanations of how Devereux treats writs of summons for purposes of insurance coverage.  It should be noted that Pennsylvania law follows the *Restatement* approach to the interpretation of written, integrated contracts.  *AstenJohnson, Inc. v. Columbia Cas. Co.*, 562 F.3d 213, 220 (3d Cir. 2009) (citing *Sunbeam Corp. v. Liberty Mutual Ins. Co.*, 781 A.2d 1189 (Pa. 2001); Restatement (Second) of Contracts § 202).  As such, the text of a contract must be

interpreted in light of evidence of the parties' performance under the contract in order to determine whether a contradiction exists. *Sunbeam Corp.*, 781 A.2d at 1193. Further, Pennsylvania case law indicates "course of performance" can be used to interpret the terms of an existing agreement. *J.W.S. Delavau, Inc. v. Eastern America Transport. and Warehousing, Inc.*, 810 A.2d 672, 684 (Pa. Super. 2002) (citing *Matthews v. Unisource Worldwide, Inc.*, 748 A.2d 219 (Pa. Super. 2000)).

At one point during her deposition, Ms. Lewis stated that Devereux reports claims when it receives an official Complaint. (ECF 85; Ex. 19 to SSF at 65:8-20). However, this testimony is at odds both with other statements made by Ms. Lewis and with evidence of how Devereux had treated Writs of Summons in the past. Ms. Lewis subsequently stated that "it's [her] practice" to send Writs of Summons to Homeland as soon as Devereux receives them. (ECF 85; Ex. 19 to SSF at 159:20-160:23). Nancy Morel, Homeland's claims adjuster, reiterated this, stating in her deposition testimony that she assumed Devereux had received the *Johnson* Writ of Summons just before turning it over to her in December 2014 because it was "their custom and practice" to report Writs immediately. (ECF 85; Ex. 20 to SSF at 83:3-10). Further, there is evidence in the record of at least two other matters, in 2011 and 2016, that Devereux reported to Homeland as claims upon receipt of a Writ of Summons. (ECF 85; Ex. 40, 41, 42, 43, 44, and 51 to SSF). The communications surrounding each matter explicitly note that previously reported incidents ripened into claims once Devereux received a Writ of Summons. (ECF 85; Ex. 44 and 51 to SSF). Therefore, Ms. Lewis's conclusory statements to the contrary, unsupported by evidence, are insufficient to establish a genuine issue of material fact on this point.

The Court briefly notes that the Writ of Summons Devereux received in June 2014 also satisfies the broader definition of a claim included in the 2014-16 Policy: "any written notice received by an Insured that any person or entity intends to hold an Insured responsible for a

Wrongful Act or an Occurrence."  (ECF 49; Third Am. Compl., Ex. D at 114).  Nonetheless, because the 2013-14 Policy encompassed the Writ of Summons as a claim, the application of the 2014-16 Policy is of no moment.

### b)  Parties' Conduct Surrounding the *Johnson* Matter

In addition to its plain language, a contract must be interpreted in light of the meaning parties have accorded to it as evidenced by their conduct in its performance.  *Capital Bus Co. v. Blue Bird Coach Lines, Inc.*, 478 F.2d 556, 560 (3d Cir. 1973).  In this case, there is ample evidence to suggest that Devereux initially believed the Writ of Summons constituted a claim and fell within the limits of the 2013-14 Policy, notwithstanding its subjective knowledge about the underlying facts of that claim.

Shortly after receiving the Writ of Summons, Kathy Ann Lewis expressed to Judy Starr that the *Johnson* matter implicated Devereux's PL/GL (professional liability/general liability) policy, which was "intended to address claims for damages."  (ECF 85; Ex. 4 to SSF at 101:5-102:9).  Further, Ms. Starr described the Writ as a "complaint" while recommending outside counsel to handle the matter in a June 2014 email.  (ECF 85; Ex. 15 to SSF).  Ms. Starr testified that she reported the *Johnson* Writ to Ms. Lewis in June 2014 because it was the Treasury group's responsibility to give notice to Devereux's insurance carriers.  (ECF 85; SSF at ¶ 63-65).  Tellingly, Devereux initially listed the Writ of Summons as a claim in its claims bordereaux with a report date of 6/19/14.  (ECF 85; Ex. 24 to SSF at 10).  The claim's report date was changed to 12/16/14 sometime within the following year; Ms. Lewis explained the adjustment by stating Devereux had reported the *Johnson* matter as a major risk event, rather than a claim, to Homeland on 6/19/14, despite the fact that Homeland was not notified of the *Johnson* matter in any capacity until December 2014.  (ECF 85; Ex. 23 to SSF at 2; Ex. 64 to SSF at 59:9-18).  Finally, during the

relevant time period, Devereux expressed its belief that the 2013-14 Policy applied to the *Johnson* matter.  When Devereux's counsel Richard Yost requested information about its insurance coverage in advance of the *Johnson* case management conference in August 2014, Ms. Lewis provided the 2013-14 Policy.  (ECF 85; Ex. 31-33 to SSF).  That policy was then included in Devereux's case management memorandum.  (ECF 85; Ex. 35 to SSF).

The parties dispute whether Devereux's subjective knowledge of the underlying facts of the *Johnson* matter is relevant in determining whether or not the Writ of Summons Devereux received in May 2014 constituted a claim.  This dispute need not be addressed because, as explained above, Devereux's handling of the Writ indicates their belief that the Writ was a claim, notwithstanding the underlying facts of the case.  Therefore, Devereux's subjective knowledge of the *Johnson* matter, or lack thereof, does not present a genuine issue of material fact, nor does it preclude the Writ of Summons from constituting a claim under the 2013-14 Policy.

### c)  Applicability of Pennsylvania MCARE Case Law

The Court will briefly address the parties' disagreement concerning the applicability of a line of Pennsylvania case law involving claims made to the Medical Care Availability and Reduction of Error (MCARE) Fund.  In its briefings, Devereux relies primarily on two cases brought under the MCARE Act to support the proposition that Pennsylvania courts do not recognize Writs of Summons as claims: *Community Hospital Alternative for Risk Transfer v. Ario*, 59 A.2d 63 (Pa. Cmwlth. 2013), and *Cope v. Insurance Commissioner of the Commonwealth of Pennsylvania*, 955 A.2d 1043 (Pa. Cmwth. 2008).  In each case, the Commonwealth Court held that Writs of Summons received by Ario and Cope, respectively, did not provide notice of claims sufficient to trigger the 180-day notice period because they did not contain sufficient information

to enable a health care provider to determine whether or not the claims were eligible for Section 715 coverage under the MCARE Act. *See Ario*, 59 A.2d at 67; *Cope*, 955 A.2d at 1050.

Devereux characterizes these holdings broadly to argue: "(i) a writ of summons containing extremely limited information is not a claim for purposes of triggering or determining insurance coverage in Pennsylvania law; and (ii) a party's subjective knowledge does not transform a writ of summons into a claim." (ECF 82; Devereux and Johnson's Joint Mot. for Part. Summ. J. at 18-19). Homeland argues in response that the MCARE cases are inapposite, as the question they addressed was whether, using principles of statutory interpretation, Writs of Summons contained sufficient information to put health care providers on notice that they were eligible to receive MCARE coverage, and not whether the Writs satisfied the definition of a claim under private insurance policies. (ECF 85; Memo. in Supp. Homeland's Cross Mot. Summ. J. at 26-30).

We agree with Homeland. Under the MCARE Act, the MCARE Fund will act as a primary insurer if: (1) the claim is made more than four years after the breach of contract or tort occurred; (2) the claim is filed within the applicable statute of limitations; and (3) the department received a written request for indemnity and defense within 180 days of the date on which notice of the claim is first given to the participating health care provider or its insurer. *See* 40 P.S. § 1303.715(a). In both *Cope* and *Ario*, the Writs of Summons at issue were determined not to have triggered the 180-day notice period because they did not address the first two prongs, therefore leaving unanswered the question of whether the underlying claims were in fact eligible for MCARE coverage. Both decisions are explicit on this point; in *Cope*, the court states, "[w]hether Provider knew that the Amended Summons was a claim for medical malpractice does not establish that Provider had notice that the...claim qualified for Section 715 coverage." *Cope*, 955 A.2d at 1052. The court in *Ario* specifically limited its holding by writing, "[F]or purposes of §715, the mere filing of a

praecipe for writ of summons does not suffice to make a claim, at least in the absence of some notice or demand communicated to those from whom damages are sought." *Ario*, 59 A.2d at 66 (citing *Yussen v. Medical Care Availability and Reduction of Error Fund*, 46 A.2d 685, 692 (Pa. 2012)).

In the instant case, neither party contests that the underlying *Johnson* claim was eligible for coverage as long as it was timely reported. The timeliness of Devereux's report of the *Johnson* claim to Homeland is the only issue bearing on its eligibility for coverage. Therefore, this case is more akin to *Cohen & Co. v. North River Ins. Co.*, cited by Homeland. In *Cohen*, the plaintiffs were insured under a claims-made-and-reported policy and entitled to indemnification for "compensatory damages caused by [their] acts, errors, or omissions" as long as claims were made and reported within the relevant policy period. *Cohen & Co. v. North River Ins. Co.*, 1994 WL 105561, at *1 (E.D. Pa. March 29, 1994). The *Cohen* court granted the defendant insurer's motion for summary judgment on the grounds that the plaintiff had failed to timely report a Writ of Summons, which "unambiguously convey[ed] to the defendant that a party [was] making a claim against it." *Id*. at *5. In this case, as in *Cohen*, the definition of a claim in the parties' insurance agreement encompasses a Writ of Summons; the line of case law holding otherwise in the limited MCARE context is insufficient to challenge this characterization.

### 2. Devereux's Estoppel Argument

The next issue to be resolved by the parties' cross-motions for summary judgment is whether Homeland is estopped by virtue of its conduct from denying coverage for the *Johnson* verdict. As an initial matter, it should be reiterated that the insurance agreement between Devereux and Homeland is a claims-made-and-reported policy, which makes notice a condition precedent to coverage, rather than a limitation, under Pennsylvania law. *4th Street Investments, LLC v.*

*Dowdell*, 2009 WL 1904620, at *1 (3d Cir. July 2, 2009) (citing *ACE American Ins. Co. v. Underwriters at Lloyds and Companies*, 939 A.2d 935, 940 (Sup. Ct. Pa. 2007)).  This is significant because in Pennsylvania, "conditions going to coverage may not generally be waived by implication from the conduct of the insurer."  *Gemini Ins. Co. v. Meyer Jabara Hotels LLC*, 2020 WL 1649888 (Pa. Super. April 3, 2020); *see also Wasilko v. Home Mut. Cas. Co.*, 232 A.2d 60 (Pa. Super. 1967) (citing *Donovan v. New York Cas. Co.*, 94 A.2d 570 (Pa. 1953); *Anotone v. New Amsterdam Cas. Co.*, 6 A.2d 566 (Pa. 1939)) ("In Pennsylvania, the doctrine of waiver or estoppel cannot create an insurance contract where none existed.").  This basis alone provides a difficult obstacle for Devereux's estoppel argument to overcome.

Further, estoppel may only be established in the insurance context under Pennsylvania law where "there [is] such conduct on the part of the insurer as would, if the insurer were not estopped, operate as a fraud on some party who has taken or neglected to take some action to his own prejudice in reliance thereon."  *Admiral Ins. Co. v. Liberty Mut. Fire Ins. Co.*, 2019 WL 3890318, at *7 (E.D. Pa. Aug. 19, 2019) (citing *Nationwide Prop. & Cas. Ins. Co. v. Shearer*, 650 F. App'x 115, 117 (3d Cir. 2016) (citations omitted)).  In order to establish estoppel, an insured must show: "(1) an inducement, whether by act, representation, or silence when one ought to speak, that causes one to believe the existence of certain facts; (2) justifiable reliance on that inducement; and (3) prejudice to the one who relies if the inducer is permitted to deny the existence of such facts."  *Id.*

In *Gemini*, the court granted summary judgment to insurer Gemini, holding as a matter of law that the insurer was not obligated to indemnify a hotel management company, Meyer Jabara, following criminal acts by two employees of one of its hotels. *Gemini*, 2020 WL 1649888, at *4.  Meyer Jabara appealed, arguing in part that Gemini had waived its right to deny coverage for the underlying events by participating in various aspects of the litigation.  *Id.* at *5.  The Superior

Court of Pennsylvania affirmed, relying both on Gemini's express reservation of its right to deny indemnification in the parties' agreement and on Pennsylvania law, cited above, that "conditions going to coverage may not generally be waived by implication from the conduct of the insurer." *Id*. at *10.

We are faced with an analogous case here. Homeland's initial coverage letter for the *Johnson* matter stated, "Homeland expressly reserves all of their rights under the Policy and/or available at law to limit or deny coverage on additional or alternative bases as other terms, conditions, exclusions, endorsements and provisions of the Policy, including representations, statements, declarations and omissions in connection with the Application incorporated therein, are found to be applicable." (ECF 85; Memo. in Supp. Homeland's Cross Mot. Summ. J. at 13; Ex. K to J. Mot. Partial Summ. J. at 412). Additionally, the letter notes, "Homeland's present coverage determination is based on the information that has been made available to date." (ECF 85; Memo. in Supp. Homeland's Cross Mot. Summ. J. at 13; Ex. K to J. Mot. Partial Summ. J. at 409). Relevant to the latter point, the coverage letter specifically states that the matter implicates the 2014-16 Policy, not the 2013-14 Policy, illustrating that Homeland was unaware of the initial date of the claim. *Id*.

Devereux characterizes the timing of Homeland's coverage denial as suspicious, writing that Homeland "abruptly" informed Devereux about the lack of coverage shortly after the issuance of an $11 million jury verdict in the *Johnson* matter in May 2017. (ECF 92; Joint Memo. in Opp. Homeland's Cross Mot. Summ. J. at 2). However, this characterization fails to account for the fact that Homeland was unaware until April 2017 that Devereux had received the Writ of Summons in June, not December, 2014. (ECF 85; SSF at ¶ 119; Ex. 64 to SSF at 59:9-60:25). In any case, in accordance with its initial coverage letter, Homeland was authorized to deny coverage based on

any applicable grounds, regardless of when those grounds were discovered.  As timely notice is a condition precedent to coverage, Homeland could not waive its necessity by implication or estoppel.  *Gemini*, 2020 WL 1649888, at *10.

### B.   Homeland's Motion for Summary Judgment Concerning Devereux's Material Breach of Contract and Failure to Satisfy a Condition Precedent

Homeland has also moved for summary judgment that it has no obligation to indemnify Devereux for the *Johnson* verdict on the alternate grounds that Devereux failed 1) to keep Homeland apprised of settlement discussions with Johnson's counsel, and 2) to provide timely notice of the *Johnson* claim and thus satisfy a condition precedent to coverage under the policies. As this Court's grant of summary judgment to Homeland on its cross-motion for summary judgment moots the outcome of this motion, it will not be addressed here.

## V.   CONCLUSION

For the reasons outlined above, Devereux and Johnson's Partial Motion for Summary Judgment is denied, and Homeland's Cross-Motion for Summary Judgment is granted.  As this disposition moots Homeland's subsequent Motion for Summary Judgment on Devereux's Breach of Contract and Failure to Satisfy a Condition Precedent, that motion will not be dismissed.

An appropriate Order follows.

BY THE COURT:


*/s/ C. Darnell Jones, II*
C. DARNELL JONES, II      J.